**Jean APPLE, As Administratrix of the Estate of Denise Smith, Deceased, Plaintiff-Appellee,**

v.

**JEWISH HOSPITAL AND MEDICAL CENTER, William Adel Aziz and The United States of America, Defendants-Appellees,**

**William Adel Aziz, Defendant-Appellee, Cross-Appellant,**

**Medical Liability Mutual Insurance Company, Defendant Intervenor Appellant, Cross-Appellee.**

Nos. 713, 714, Dockets 86–6218, 86–6224.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1987.

Decided Sept. 18, 1987.

Michael A. Ellenberg, New York City (James H. Irish, LeBoeuf, Lamb, Leiby & MacRae, New York City, of counsel), for intervenor-appellant Medical Liability Mut. Ins. Co.

Michael I. Josephs, New York City (Garbarini, Scher & DeCicco, P.C., of counsel), for defendant-appellant William Adel Aziz.

Kathleen Haggerty, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee U.S. of America.

Alfred S. Julien, New York City (David B. Turret, Judith N. Reeves, Julien & Schlesinger, P.C., New York City, of counsel), filed a brief for plaintiff-appellee Jean Apple, as Administratrix of the Estate of Denise Smith, deceased.

Before CARDAMONE, WINTER and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal encompasses two claims arising from the settlement of part, and trial of the remainder of, a medical malpractice action. Dr. William Adel Aziz appeals from so much of an October 1, 1986 order of the United States District Court for the Eastern District of New York (Costantino, J.) that denied his motion for a setoff from a jury award for the pain and suffering of decedent Denise Smith. Appellant seeks—

pursuant to New York's General Obligations Law § 15–108—to set off the amount of the settlement paid by two code-fendants—the Jewish Hospital and Medical Center and the United States of America—to the plaintiff, Jean Apple, the administratrix of decedent Smith's estate. The details of the settlement are set out below. Intervenor-appellant Medical Liability Mutual Insurance Company (Medical Mutual), which provided medical malpractice insurance for Dr. Aziz, appeals from that part of the same order denying its motion to strike the finding that it was guilty of bad faith in not honoring its duty either to defend or to settle the action. Medical Mutual also appeals from the denial of its motion for the district court judge's recusal.

## I BACKGROUND

### A. *Facts*

Denise Smith was admitted to Jewish Hospital and Medical Center (Jewish Hospital) on April 24, 1981 under the care of Dr. Lesly Kernisant, an obstetrician and gynecologist. At that time, she was a week late in delivery and a decision was made to effect her delivery by caesarian section. Unfortunately, due to complications during that operation, the patient—who delivered a healthy baby boy—died a week later. Dr. Aziz, an anesthesiologist, was acting chief of the obstetrics anesthesia department at Jewish Hospital. Although his name was signed to the hospital record indicating that he had administered the anesthesia during Smith's operation, he did not actually administer it.

### B. *Proceedings Below*

Jean Apple, as administratrix of the estate of Denise Smith and guardian of Smith's son, originally brought suit in New York State Supreme Court in June 1982. In her complaint against Jewish Hospital and Drs. Aziz and Kernisant, she alleged causes of action for conscious pain and suffering and wrongful death. Dr. Kernisant, an employee of the United States Public Health Service, a federal organization, informed the government of the suit, and Drs. Kernisant and Aziz also advised

Medical Mutual, their malpractice carrier. The insurer retained counsel to represent both physicians.

In February 1983, the government removed the suit to the Eastern District of New York and moved to dismiss the action against Dr. Kernisant and to substitute itself for him. Apple cross-moved to remand the action in its entirety to New York Supreme Court. The district court granted both of the government's motions and denied plaintiff's cross-motion in a memorandum decision and order dated September 13, 1983, which is reported at 570 F.Supp. 1320 (E.D.N.Y.1983).

The action went to trial on May 27, 1986. Although the parties were conducting settlement discussions, Medical Mutual rejected efforts to settle the litigation. The first finding of bad faith against it was made at a conference held in the district judge's chambers on May 30, 1986. Attorneys representing the government, Jewish Hospital, and the plaintiff were present at that conference. Dr. Aziz had two attorneys: one, Robert Gibbons, Esq., was retained by Medical Mutual to represent Dr. Aziz in the action, the other, Paul Callan, Esq., was retained by Dr. Aziz personally to "observe ... portions of the trial."

During the conference, attorney Callan stated that the carrier had not "participated in a good faith manner in the settlement of the negotiations in any way, shape or form." Mr. Gibbons declined to address this contention but promised "to convey the relevant information to the carrier." Treating attorney Callan's statement as an application for a motion for a finding of bad faith against Medical Mutual, the district court granted the motion and ruled further that "any judgment [against Dr. Aziz] shall be a judgment against the insurance company." The effect of this ruling was to make Medical Mutual liable for any judgment against Dr. Aziz above the limits of his policy.

Subsequently at the same conference, the government's attorney claimed that Dr. Kernisant's policy with Medical Mutual required the company to defend the government as well as the doctor, and stated that

it had previously asked the company to join in Dr. Kernisant's defense, but that the company had refused. The government's attorney then stated that the government "believes that the insurance company to be in bad faith with respect to the representational obligations to the doctor [Dr. Kernisant]."

The attorney representing Jewish Hospital also joined in the government's "motion" for a bad faith finding. Attorney Gibbons—perhaps recognizing the conflict of interest implications of his position—declined either to challenge or to concede bad faith. The district court again made a finding that Medical Mutual was acting in bad faith. While not specifically addressing the government's bad faith claim, the trial judge stated that any judgment entered against the government at trial would also be against the insurance company. The effect of the holding was to make Medical Mutual the indemnitor of the government as well as of Dr. Aziz. No determination was made at that time that Jewish Hospital would also be indemnified against any adverse judgment.

Against this backdrop, the trial resumed. On June 4 during a conference between the court and the attorneys for all the parties, plaintiff's attorney suggested continuing settlement talks, but said that Medical Mutual was reluctant to send a representative. The district court expressed its irritation at the carrier's failure to send anyone with authority to settle the case on behalf of Dr. Aziz and threatened to send out United States marshals "to bring in the head of the company." Mr. Gibbons offered to secure the attendance the following day of a representative with authority to settle.

Barry Aquilino, a claims examiner for the company appeared the next day, along with several lawyers representing Medical Mutual. The district court judge apparently instructed these individuals not to leave the courtroom or face arrest. The record is unclear at what time they arrived or when they were told of the threatened arrests. During the early afternoon of June 5, the district judge conducted a colloquy with them and the attorneys for the various parties. One of Medical Mutual's attorneys identified himself as representing the carrier and described Mr. Aquilino's position. Dissatisfied with Aquilino's lack of authority, the district judge again reiterated his desire to have a company official with "the final word" on a possible settlement involved in the negotiations. The judge again warned these company representatives that they were not free to leave the courtroom.

At the end of the day's trial session, one of the carrier's lawyers asked the court whether they would have to appear on the next day and was advised that all three must return. At that point, a Medical Mutual attorney attempted to serve the district court judge with a petition for a writ of mandamus seeking relief in this Court, which the judge refused to accept. Nonetheless, the petition was presented to this Court, which promptly stayed the district court's verbal order that had directed Medical Mutual's representatives to return to its courtroom the following day.

Prior to the trial's resumption, the plaintiff reached a settlement with the government and Jewish Hospital. The settlement—announced on June 9 and memorialized in an order filed June 19—provided that Jewish Hospital and the United States would contribute $600,000 and $199,500 respectively. In Apple's affidavit, annexed to the order, she states that the amount agreed to be paid was solely for the "compromise and settlement of the cause of action for wrongful death," while the "cause of action for conscious pain and suffering" was voluntarily discontinued. The stipulation, discontinuing the action with prejudice between Apple and Jewish Hospital and the government and signed by the district court and filed June 30, does not make a similar distinction between the two causes of action. Because both the order and stipulation each expressly state that the action against Dr. Aziz was not settled, trial of that action resumed on June 16 with Dr. Aziz as the sole defendant.

Meanwhile, the district court memorialized its earlier bad faith findings in an

order filed June 27. Further, it stated that it had treated the government's and Jewish Hospital's motions to join Medical Mutual as a party as being "made" pursuant to Fed.R.Civ.P. 13(h) and granted them. Jewish Hospital's motion to assert a cross-claim for indemnity against both Dr. Aziz and Medical Mutual was also granted, and the court ordered that the government and Jewish Hospital have a judgment of indemnification against Dr. Aziz and Medical Mutual for the amount paid in settlement. It was further ordered that Dr. Aziz be indemnified by his insurance company for the amount he expended to indemnify the government and Jewish Hospital, as well as for liability above his policy limits.

Subsequent to this second order of June 27, the action against Dr. Aziz went to the jury, which on July 2 returned a verdict in favor of the plaintiff on both causes of action, awarding $325,000 for wrongful death and $50,000 for decedent's conscious pain and suffering. Answering an interrogatory, the jury found Dr. Aziz responsible for 40 percent of the total amount of damages.[1] Appellant moved for a setoff of the settlement amount against the verdict, which the trial court held could be used to offset the wrongful death verdict but not the conscious pain and suffering verdict. Subsequently, Medical Mutual moved to intervene pursuant to Fed.R.Civ.P. 24. As part of its motion, Medical Mutual sought to vacate the June 27 indemnification order and to have the district court judge recuse himself from deciding the motion.

On October 1, the trial court declined to offset the jury's award on the pain and suffering claims, but nonetheless did reduce that award from $50,000 to $20,000 to reflect the jury's determination of Aziz's 40 percent liability. Judge Costantino also granted Medical Mutual's motion to intervene and vacated the earlier indemnification judgments that he had granted. At the same time, Jewish Hospital's cross-motion for indemnification against Dr. Aziz and his carrier was denied. The district court let stand its finding that Medical Mutual acted in bad faith with regard to its failures to settle and/or to defend. In making these rulings, the district judge obviously—without expressly so stating—refused to recuse himself. Both Dr. Aziz and Medical Mutual appeal from this October 1, 1986 order.

## II DISCUSSION

### A. *Proper Application of General Obligations Law § 15–108*

The initial question raised on appeal requires a brief discussion of the provisions of New York's General Obligations Law § 15–108. That statute deals with the effect of a release or settlement with one or more tortfeasors when the plaintiff does not also settle claims against the remaining tortfeasors. More specifically for our purposes, it provides that in situations involving tortfeasors liable "for the same injury, or the same wrongful death," a release or settlement with one of the tortfeasors does not release the other tortfeasors unless the explicit terms of the settlement contain a general release. N.Y.Gen.Oblig.Law § 15–108 (McKinney 1978). But the statute permits the nonsettling tortfeasors to make use of the settlement. If the nonsettlers are found liable to the plaintiff for the same injury or wrongful death, their liability is reduced by the greatest of the following: the amount stipulated in the release, the amount of actual consideration given for the release, or the amount of the released tortfeasor's equitable share of the damages.

█ This appeal raises an interesting question regarding the scope of § 15–108. The plaintiff here had several claims against the various defendants. The claim

---

1. The interrogatory to the jury was perhaps misleading. Apparently, the sequence of questions to the jury was as follows: damages for wrongful death, percentage of liability for the total amount of damages, and damages for pain and suffering. Thus, the jury may have believed that the question concerning the percentage of liability referred only to liability for wrongful death. In partially granting Dr. Aziz's motion to reduce the award for the pain and suffering award, the district court implicitly held that the jury's determination concerning liability applied to both claims.

for wrongful death against Jewish Hospital and the government was settled, with a recited amount paid as consideration for a release. The claim for conscious pain and suffering against these two defendants was voluntarily discontinued, without a recited amount for the discontinuance. Dr. Aziz, the nonsettling defendant, was found liable on both claims. All the parties to this appeal agree that Aziz may claim a setoff on the judgment for wrongful death. More troublesome is whether he is entitled to a setoff against the $50,000 conscious pain and suffering award.

Although no controlling New York Court of Appeals precedent has been brought to our attention, there is case law that indicates that Dr. Aziz should be able to claim a setoff for both claims. In *Killeen v. Reinhardt*, 71 A.D.2d 851, 419 N.Y.S.2d 175 (2d Dep't 1979), plaintiff sued three physicians and a hospital for medical malpractice for wrongful death and conscious pain and suffering in the treatment of his deceased wife. At a pre-trial conference, plaintiff settled with two of the physicians for $265,000 and voluntarily discontinued the action against the third physician, receiving *no* monetary consideration for the discontinuance. *Id.* at 852, 419 N.Y.S.2d 175. The case went to the jury against the hospital alone, which returned a general verdict of $650,000. The jury apportioned liability as follows: settling physicians—30%; "voluntary discontinued" physician—20%; and the hospital—50%. The trial court held the hospital was entitled to a setoff under § 15–108 that took account of the "voluntarily discontinued" physician's liability as well. *Id.*

On appeal, the Second Department agreed: "[W]e hold that the trial court correctly ruled that any verdict against the hospital must be reduced not only by the ... settlement but also by [the voluntarily discontinued physician's] equitable share of the damages...." *Id.* at 853, 419 N.Y.S.2d 175. This ruling meant that from the $650,000 general verdict the hospital was entitled to have the judgment against it reduced by the $265,000 settlement and also by the voluntarily discontinued physician's 20% equitable share of the damages.

Given this holding, we believe that New York law would allow Dr. Aziz to claim a setoff against the settlement figure for the judgment on the claim that the plaintiff had voluntarily discontinued against Jewish Hospital and the government.

Consideration of the purposes underlying § 15–108 also supports the conclusion that appellant should be entitled to a setoff on both claims. The section has two purposes: first, to encourage settlements, *see Rock v. Reed-Prentice Division of Package Machinery Co.*, 39 N.Y.2d 34, 40–41, 382 N.Y. S.2d 720, 346 N.E.2d 520 (1976); and, second, to ensure that nonsettling tortfeasors are not required to bear more than their equitable share of liability. *See Mielcarek v. Knights*, 50 A.D.2d 122, 126, 375 N.Y. S.2d 922 (4th Dep't 1975). With regard to the first purpose, adopting the *Killeen* rule in the present case would not adversely affect the incentive of a party to settle. The effect of the rule, if any, would be on the parties' apportionment of the settlement, not on the more important question of *whether* to settle. Failing to adopt the *Killeen* rule, on the other hand, would do violence to the rule's second purpose. Not allowing the nonsettling tortfeasor to claim against the settlement amount would require that party to bear more than its equitable share. Without suggesting that plaintiff has maneuvered the present claims, we note that an alternate rule could lead to manipulation by a plaintiff. Since under CPLR 3217(a) a plaintiff is entitled to discontinue a claim without a court order, a plaintiff possessing two claims against each of two different tortfeasors might settle with one tortfeasor by accepting a settlement on the first claim, and voluntarily discontinuing that claim against the second tortfeasor. Then he could exploit the claims by proceeding to trial against the nonsettling tortfeasor on the claim that had been voluntarily discontinued against the settlor. Were we to adopt appellee Apple's theory, the nonsettling tortfeasor would not be able to claim *any* setoff against a possible judgment because no consideration would have been given for the voluntarily discontinued claim. Conse-

quently, the nonsettling tortfeasor would clearly be burdened with more than its equitable share of plaintiff's damages.

For these reasons, Dr. Aziz is entitled to a setoff against plaintiff's claims for conscious pain and suffering as well as for wrongful death. Thus, from his total liability of 40 percent of $325,000, or $130,000, plus 40 percent of $50,000, or $20,000, it is obvious that crediting the $799,500 settlement against both causes of action leaves Dr. Aziz owing this plaintiff no damages.

## B. The Validity of the Bad Faith Finding

We turn now to the two claims raised by Medical Mutual. The first claim is a challenge to the district court's refusal to vacate its finding that Medical Mutual acted in bad faith when it failed to honor its obligations to defend or to participate in settlement negotiations. The district court's June 27 order contained these bad faith findings, which were coupled with the order directing the carrier to indemnify Jewish Hospital, the government, and Dr. Aziz.

One sure sign of the confusing nature of these bad faith findings is the inability of the parties to agree on their proper characterization. Invoking Fed.R.Civ.P. 13, the government labels them a grant of a counterclaim, and Medical Mutual calls it a grant of a crossclaim. See Fed.R.Civ.P. 13(g). Attaching the proper label to what the district court did in its June 27 order was not the subject of briefing by the parties. Therefore, we decline to decide the issue, particularly since its resolution is not essential to deciding this appeal. However the district court's action is depicted—

counterclaim, crossclaim, or third party complaint[2]—it cannot stand.

■ The reason is plain. Medical Mutual was never served with process prior to its motion to intervene. Original service of process is, of course, a sine qua non requirement for a court to acquire jurisdiction over an additional party. See 6 C. Wright & A. Miller, Federal Practice & Procedure § 1436, at 194 (discussing counterclaims and crossclaims); § 1445, at 240 (discussing third party complaints) (1971). The effect of the failure to serve the carrier with the mandated process is that the bad faith findings are invalid for want of personal jurisdiction. See American Telephone & Telegraph Co. v. Merry, 592 F.2d 118, 126 (2d Cir.1979); Martin v. New York State Department of Mental Hygiene, 588 F.2d 371, 373 (2d Cir.1978) (per curiam); see also Sieg v. Karnes, 693 F.2d 803, 807 (8th Cir.1982); Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir.1982). At the same time, we decline Medical Mutual's invitation to find that it acted in good faith in this matter. Such a determination—either way—is not the proper function of an appellate court.

## C. The Recusal of the District Court

The remaining issue on appeal—Medical Mutual's motion made pursuant to 28 U.S.C. §§ 144, 455 (1982) requesting the district court to disqualify itself—was, as noted, implicitly denied. Section 144 provides that a judge should recuse himself when a party has filed a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice" against the party or in favor of an adverse party. Section 455(a) provides that a judge shall disqualify himself in any proceeding in which

**2.** Attempts to hold an insurer in bad faith for not honoring its obligations to defend or engage in good faith settlement negotiations are not uncommon. See, e.g., Luria Brothers & Co. v. Alliance Assurance Co., 780 F.2d 1082, 1092 (2d Cir.1986) (duty to defend); San Jose Production Credit Assoc. v. Old Republic Life Ins. Co., 723 F.2d 700, 703 (9th Cir.1984) (same); Kivi v. Nationwide Mutual Ins. Co., 695 F.2d 1285, 1287 (11th Cir.1983) (duty to engage in good faith negotiations). In instances where the insured, sued by someone injured by its action, seeks to

determine the scope of an insurer's obligations under the policy, the procedural mechanism has apparently always been Rule 14 impleader of the insurer. See, e.g., Ezell v. Hayes Oilfield Constr. Co., 693 F.2d 489 (5th Cir.1982), cert. denied, 464 U.S. 818 (1983); Howard v. Russell Stover Candies, Inc., 649 F.2d 620 (8th Cir.1981); Colton v. Swain, 527 F.2d 296 (7th Cir.1975); see also 6 C. Wright & A. Miller, Federal Practice and Procedure § 1449, at 268 (1971) (citing cases and commentary).

his impartiality might reasonably be questioned. Additionally, § 455(b)(1) prescribes recusal where a judge has "a personal bias or prejudice concerning a party."

Courts considering the substantive standards of §§ 144 and 455(b)(1) have concluded that they are to be construed in *pari materia. See, e.g., United States v. Pugliese,* 805 F.2d 1117, 1125 (2d Cir.1986). The analysis is the same under both sections, that is, it looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context. *In Re International Business Machines Corp.,* 618 F.2d 923, 928 (2d Cir.1980). And, the substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned. *See, e.g., United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986).

We have previously held that § 455(a) provides broader grounds for disqualification than either § 144 or § 455(b)(1). *See United States v. Wolfson,* 558 F.2d 59, 62–63 (2d Cir.1977); *see also* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3542, at 556 (2d ed. 1984). When, as here, a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated. *See United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980). Inasmuch as Medical Mutual only alleges instances of the district court's allegedly "immediate and hostile bias and prejudice" as grounds for recusal, we treat its motion as being made under §§ 144 and 455(b)(1).

Before reaching the merits of a recusal motion, we must first consider whether the procedural requirements have been met. Section 144 expressly provides that a party moving for recusal make its motion in a timely fashion. Although § 455 does not contain such a requirement, timeliness has been read into this section as well. *See International Business Machines,* 618 F.2d at 932. Further, § 144 requires that a party file an affidavit, though the filing of such an affidavit does not automatically disqualify a judge. *See National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). The affidavit must be "sufficient," to provide "fair support" for the charge of partiality. *See Wolfson v. Palmieri,* 396 F.2d 121, 124 (2d Cir.1968) (per curiam) (quoting *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir.1966)). We have not decided whether the filing of an affidavit of bias is required as a procedural prerequisite for § 455. *See United States v. Wolfson,* 558 F.2d at 62 n. 11. *Cf. Sibla,* 624 F.2d at 867–68 (suggesting that an affidavit is not required under § 455). But when proffered, an affidavit is scrutinized for sufficiency. *See National Auto Brokers,* 572 F.2d at 958.

The decision whether to grant or deny a recusal motion—i.e., whether the affidavit is legally sufficient—is a matter confided to the district court's discretion. *See Varela v. Jones,* 746 F.2d 1413, 1415–16 (10th Cir.1984); *Weingart v. Allen & O'Hara, Inc.,* 654 F.2d 1096, 1107 (5th Cir., Unit B, 1981); *Johnson v. Trueblood,* 629 F.2d 287, 290 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981); *Blizard v. Frechette,* 601 F.2d 1217, 1221 (1st Cir.1979). Complicating our review of the exercise of that discretion in this case is the trial court's silent implied denial of the motion.

Whether Medical Mutual timely made its motion presents a serious threshold question. Possibly the district court relied on this ground for denial. It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim. *See, e.g., Marcus v. Director, Office of Workers' Compensation Programs,* 548 F.2d 1044, 1050 (D.C. Cir.1976) (per curiam); *United States v. Patrick,* 542 F.2d 381, 390 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). Yet, in considering the question of timeliness, the actual time elapsed between the events giving rise to the charge of bias or prejudice and the

making of the motion is not necessarily dispositive. *See Smith v. Danyo,* 585 F.2d 83, 86 (3d Cir.1978). A number of factors must be examined, including whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings, *see id.;* (2) granting the motion would represent a waste of judicial resources, *see International Business Machines,* 618 F.2d at 933; (3) the motion was made after the entry of judgment, *see Studley,* 783 F.2d at 939 (motion for recusal filed "weeks" after trial is presumptively untimely); and (4) the movant can demonstrate good cause for delay. *See United States v. Branco,* 798 F.2d 1302, 1304 (9th Cir.1986); *Studley,* 783 F.2d at 939.

When a would-be intervenor makes a motion to intervene and recuse, the timeliness of its motion will be examined as though the intervenor was a party at the time it learned of facts demonstrating the basis for disqualification. As with the motion for recusal itself, two concerns prompt this rule. First, judicial resources should not be wasted; and, second, a movant may not hold back and wait, hedging its bets against the eventual outcome. Of course, the intervenor must have been able to intervene under the requirements of Fed.R. Civ.P. 24 at the time it learned of the facts that prompted its motion.

■ Medical Mutual's motion is untimely in light of these factors. We may safely assume that the carrier's representatives advised it of the district court's June 5th actions and that it learned of the bad faith finding on May 30th. Even if that assumption is misplaced, a copy of the court's proposed June 27th order—memorializing the May 30th finding—was served on Medical Mutual on June 19th. Thus, just after the middle of June the movant had notice that it was liable to indemnify Jewish Hospital and the government for the settlement they had previously reached with the plaintiff. Medical Mutual nonetheless waited for two months before it made its recusal motion. Moreover, it made the motion one month after the entry of judgment against Dr. Aziz. Given this sequence of events, the motion is presumptively untimely, *see Studley,* 783 F.2d at 939, particularly as Medical Mutual failed to give any reason for its delay. *See Branco,* 798 F.2d at 1304.

We acknowledge that some of the factors do not support a finding of untimeliness. Granting the motion would not represent a waste of judicial resources, since all the insurance company asks is that another judge vacate the finding of bad faith. *Cf. International Business Machines,* 618 F.2d at 934 (granting recusal motion after years of then unresolved litigation involving "technical" issues would be "catastrophic"). Further, Medical Mutual cannot be said to have held back and awaited the outcome of the litigation before bringing its motion. Regardless of what developed at the trial that ended in July, the company was liable for the settlement amounts as of the end of June. Whatever the result of Dr. Aziz's action, it would not affect that liability. Nevertheless, for the reasons stated, Medical Mutual should have made its motion earlier and its failure to do so made its recusal motion untimely.

### D. *Effort to Compel Settlement*

Finally, we would be remiss were we not to comment on one aspect of the district court's conduct of the proceedings below; more specifically, its strong effort to effect a settlement of the case. The district court's bench order directing the insurance company representatives to remain in the courtroom under threat of arrest was most ill-advised, even granting a degree of frustration over what the trial court obviously considered the company's uncooperative attitude in disposing of this litigation. Yet, for a judge to employ the power of his judicial office because he is personally piqued evinces such a lack of patience and courtesy to those with whom the court deals in its official capacity as to bring into question the judge's impartiality. Forcing the three company representatives to sit in the courtroom like truant schoolchildren cannot be justified or condoned as an appropriate way for district judges to effectuate settlements. In addition, so far as can be seen from this record, the company was

never afforded an opportunity to explain why it had refused to settle.

## III CONCLUSION

Insofar as the judgment appealed from denied Dr. Aziz's motion to set off the whole of the judgment against him for decedent's conscious pain and suffering, it is reversed and the judgment is modified to reflect that setoff, resulting in no damages being owed from defendant Aziz to plaintiff Apple. The findings of bad faith against Medical Mutual are reversed and vacated for want of personal jurisdiction. The denial of Medical Mutual's motion to recuse is affirmed.

Reversed, except insofar as the appeal is from a denial of a motion to recuse, which is affirmed.

WINTER, Circuit Judge, concurring in the result:

Respectfully, I write separately with regard to Medical Mutual's recusal motion.

Because we vacate the bad faith findings for want of personal jurisdiction over Medical Mutual, the recusal motion is moot. The discussion is therefore unnecessary dictum.

Moreover, the discussion also seems a doubtful restatement of the law. First, it introduces a measure of confusion in declaring "that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim" and immediately thereafter announcing that "the actual time elapsed between the events giving rise to the charge of bias or prejudice and the making of motions is not necessarily dispositive."

Second, the "as soon as possible" language is particularly troubling. Recusal motions are serious matters, and responsible counsel are most reluctant to make them, largely out of respect for judges. This reluctance is by and large good for the judicial process. We should not therefore structure the law so as to encourage premature or unnecessary recusal motions.

I would therefore favor a rule requiring that facts indicating recusal be brought to a judge's attention immediately where the judge does not know of the basis for disqualification. This may be necessary to prevent an unintentional appearance of impropriety. Where the facts are known to the district judge, I see no reason to demand more than that counsel make their motion before judicial resources are unnecessarily wasted or before the judge renders a decision adverse to the movant. Indeed, my review of the case law cited by my colleagues suggests that that is in fact the law whatever the dicta that may be found in those opinions.

In view of the mootness of the issue in the present case I will not discuss whether the recusal motion was in fact timely made.