**UNITED STATES of America**

v.

**Randall TERRY, Defendant.**

**No. 92 Cr.Misc. #1 Pg. 46 (RJW).**

United States District Court,
S.D. New York.

Oct. 6, 1992.

B. Mayer, Asst. Attys. Gen., Mary Ellen Burns, Chief Asst. Atty. Gen., of counsel), for U.S.

Jay Alan Sekulow, Washington, D.C. (Patrick Monaghan, John Stepanovich, of counsel), for defendant.

## OPINION

ROBERT J. WARD, Senior District Judge.

Defendant Randall Terry has served and filed nine separate motions in connection with his forthcoming criminal contempt trial before this Court.

Defendant's motions are:

1. Motion to Take Deposition of Governor Bill Clinton;
2. Motion to Recuse;
3. Motion to Disqualify the Attorney General from Appointment as Prosecutor;
4. Motion for Bill of Particulars;
5. Motion to Amend Order to Show Cause;
6. Motion to Dismiss Count Two of Notice of Charge;
7. Motion to Present Constitutional Arguments;
8. Motion for Discovery Pursuant to Rule 16, Fed.R.Crim.P.; and
9. Motion for Material Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The New York State Attorney General ("the Attorney General"), who was appointed as prosecutor by this Court pursuant to Rule 42, Fed.R.Crim.P., opposes the first seven motions, does not oppose the eighth motion, and asserts that the ninth motion should be denied, without prejudice, as premature.

At oral argument on September 24, 1992, the Court disposed of eight of defendant's nine motions [1] and deferred a decision on

---

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Sanford M. Cohen, Edward D. Saslaw, Robert R. Reed, Shelley

1. The motions were disposed of as follows:
   —The Motion to Take the Deposition of Governor Bill Clinton was denied without prejudice to renewal after the government has completed the presentation of its direct case at trial;

   —The Motion to Recuse was denied;
   —The Motion for Bill of Particulars was denied, except as consented to by the Attorney General;

one motion, the Motion to Disqualify the Attorney General from Appointment as Prosecutor, pending further submissions to the Court. With reference to two of the motions decided at oral argument, i.e. the Motion to Recuse and the Motion to Present Constitutional Arguments, the Court indicated that it would file reasoned decisions shortly. This Opinion contains those reasoned decisions.

## I. BACKGROUND

After a hearing held on July 13, 1992 ("the July 13 Hearing"), this Court issued a preliminary injunction in *People of the State of New York v. Operation Rescue National,* 92 Civ. 4884 (RJW) (the "Preliminary Injunction"), which provided that the defendants in that action, including Randall Terry, were enjoined from, *inter alia,*

presenting or confronting either Governor Bill Clinton or Senator Albert Gore with any fetus or fetuses or fetal remains in the City of New York or elsewhere in the Southern District of New York between [12:45 P.M. on July 13, 1992] and 12:00 midnight on July 17, 1992....

Preliminary Injunction, Second Decretal Paragraph, Clause (7).

The Third Decretal Paragraph of the Preliminary Injunction indicated:

IT IS FURTHER ORDERED that nothing in the Court's Order should be construed to limit defendants and those acting in concert with them from exercising their legitimate First Amendment rights....

In addition, the Fourth Decretal Paragraph of the Preliminary Injunction provided:

IT IS FURTHER ORDERED that defendant organizations and their officers and

agents, and all individual defendants and those acting in concert with them, shall make good faith efforts to instruct all organizations and individuals they believe to be planning to participate in any of the activities enumerated in clauses (1) through (7) of the second decretal paragraph above not to engage in the proscribed activities....

During the July 13 Hearing, this Court informed Terry's counsel, Raymond L. Mylott, Jr., that he could immediately appeal the granting of the Preliminary Injunction.[2] No appeal was filed on either July 13 or July 14, 1992.

The government alleges that, on the morning of July 14, 1992, Governor Bill Clinton was presented or confronted with a fetus in the vicinity of the hotel at which he was staying in Manhattan and that, on the basis of this occurrence and related incidents, Randall Terry violated the terms of the Preliminary Injunction.

At a contempt hearing held on July 16, 1992 ("the July 16 Hearing"), this Court indicated that,

[h]aving imposed coercive [civil contempt] fines on [Randall Terry on] prior occasions, and having ascertained that these fines have had no effect and having concluded that there is only one course to follow with regard to Mr. Terry, I think at least as far as Randall Terry is concerned, the next step will have to be the imposition of criminal sanctions. I intend, if this matter is proved, to impose those sanctions upon him.

July 16 Hearing Transcript at 8. Terry was released on a $25,000 personal recognizance bond, secured by $250 in cash.

The United States Attorney for the Southern District of New York subsequent-

---

—The Motion to Amend the Order to Show Cause was denied without prejudice to renewal after the government has completed the presentation of its direct case at trial;

—The Motion to Dismiss Count Two of the Notice of Charge was denied without prejudice to renewal after the government has completed the presentation of its direct case at trial;

—The Motion to Present Constitutional Arguments was denied;

—The Motion for Discovery Pursuant to Rule 16, Fed.R.Crim.P. was granted; and

—The Motion for Material Pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was granted in part and denied in part.

**2.** *See* footnote 7, *infra.*

ly declined to prosecute the alleged criminal contempt and "suggest[ed] that the Court consider appointing a private attorney to prosecute the putative contumacious conduct pursuant to Rule 42(b) of the Rules of Criminal Procedure." Letter of August 3, 1992 from Otto G. Obermaier, United States Attorney to Hon. Robert J. Ward. At a hearing on August 5, 1992, this Court appointed the New York State Attorney General to prosecute Terry.

Terry was arraigned and pled not guilty on August 12, 1992. His bail was continued. The instant motions followed.

## II. MOTION TO RECUSE

"In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over the case. Litigants are entitled to an unbiased judge; not to a judge of their choosing." *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989) (citation omitted); *see also United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). For this reason, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert, Inc.,* 861 F.2d at 1312.

Defendant seeks recusal pursuant to 28 U.S.C. § 144 and 28 U.S.C. §§ 455(a) & (b)(1). Recusal is required under 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1) whenever there is "personal bias or prejudice." Recusal is required under 28 U.S.C. § 455(a) whenever a judge's "impartiality might reasonably be questioned."

In support of his motion, Terry has filed a declaration claiming that "the Honorable Robert J. Ward ... has a personal bias or prejudice against me." Declaration in Support of Motion to Recuse ¶ 2. Defendant goes on to declare that,

> [t]he facts and the reasons for the belief that such bias or prejudice exists are that the Honorable Judge, at a civil contempt

hearing held on July 16, 1992, repeatedly expressed exasperation with me for continuing violations of the judge's injunction, even though the New York State Attorney General has yet to put forth evidence that any such violations occurred. Also, the Honorable Judge indicated at this hearing a clear predisposition of adjudging and sentencing me for criminal contempt for a period of six months, prior to any trial on the merits.

*Id.* ¶ 3.

The Court now turns to the standards for recusal under 28 U.S.C. § 144 and 28 U.S.C. §§ 455(a) & (b)(1) and applies these standards to the instant matter.

### A. *Recusal Pursuant to 28 U.S.C. §§ 144 and 455(b)(1): For "Personal Bias or Prejudice"*

█ Defendant argues that the Court should recuse itself under 28 U.S.C. § 144, which provides, in relevant part,

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a *personal bias or prejudice* either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

(emphasis added).

Defendant also moves pursuant to 28 U.S.C. § 455(b)(1), which applies the same standard:

> (b) [Any justice, judge, or magistrate of the United States] shall also disqualify himself in the following circumstances:
>
> (1) Where he has a *personal bias or prejudice* concerning a party ...

(emphasis added).

It is well-established that these sections, which employ the same analysis in establishing whether personal bias or prejudice exists, "look[ ] to *extrajudicial* conduct as the basis for making such a determination, not conduct which arises in a judicial context," *Apple v. Jewish Hospital and Medical Center,* 829 F.2d 326, 333 (2d Cir.1987) (emphasis added); *see also United States*

v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) (under § 144, "[t]he alleged bias and prejudice to be disqualifying must stem from an extra-judicial source and result in an opinion on the merits *on some basis other than what the judge has learned from his participation in the case.*") (emphasis added), *quoted in In re International Business Machines Corp.*, 618 F.2d 923, 927 (2d Cir. 1980).

Indeed, the Second Circuit has written that, under § 455(b)(1), "what a judge learns or comes to believe in his judicial capacity 'is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification.'" *In re Drexel Burnham Lambert, Inc.*, 861 F.2d at 1314 (quoting *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976)).

"[T]he substantive standard for recusal [under §§ 144 & 455(b)(1)] is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hospital and Medical Center*, 829 F.2d at 333 (citing *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986)).

Defendant asserts that, at the July 16 Hearing, the Court exhibited personal bias or prejudice against him in two ways: (1) by "repeatedly express[ing] exasperation with defendant Randall Terry because of an alleged continued willingness to violate the mandates of this Court's [previous] injunctions,"[3] and thereby "prejudg[ing]" the outcome of this case, "without any evidence," Memorandum in Support at 2–3; and (2) by "express[ing] its willingness both to find ... Terry guilty of criminal contempt and to sentence him to six months in jail." *Id.* at 4. The Court finds no merit in either of defendant's conten-

tions, each of which relies entirely on the Court's comments at the July 16 Hearing.

In support of his first assertion, Terry points to three excerpts from the July 16 Hearing Transcript where the Court referred to defendant's actions in connection with previous proceedings held before this Court in *New York State National Organization for Women v. Terry*.[4] On the basis of these excerpts, Terry asserts that "this Court expressed a bias and prejudice" toward him. These excerpts, including contextual statements made by the Court but not quoted by Terry, are as follows:

(1) Randall Terry continued to express his contempt for orders of this Court. Having imposed coercive fines on those prior occasions, and having ascertained that these fines have had no effect and having concluded that there is only one course to follow with regard to Mr. Terry, I think at least as far as Randall Terry is concerned the next step will have to be imposition of criminal sanctions. [I intend, if this matter is proved, to impose those sanctions upon him.]

July 16 Hearing Transcript at 8 (brackets indicate statements made by the Court not quoted by defendant in his Memorandum in Support).

(2) I have lost patience ... with a defendant whom I have dealt reasonably charitably with for three years, who continues at every opportunity to comment negatively concerning the judicial process. I have before me at least one individual who has put himself above the law.... [This is a government of laws and not of men. It is my job to enforce the law and, if the law is broken, to penalize those who are proved to have broken the law. I don't intend to treat all of the defendants the same]. I intend [to examine each of

---

**3.** Defendant cites to the proceedings reported in *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350 (S.D.N.Y.1990), *aff'd in part and rev'd in part* 961 F.2d 390 (2d Cir.1992), *petition for cert. filed* Aug. 11, 1992.

**4.** These proceedings are reported at 697 F.Supp. 1324 (S.D.N.Y.1988), *subsequent proceeding*, 704 F.Supp. 1247 (S.D.N.Y.1989), *aff'd in part and*

*modified in part*, 886 F.2d 1339 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); 732 F.Supp. 388 (S.D.N.Y. 1990), *subsequent proceeding*, 737 F.Supp. 1350 (S.D.N.Y.1990), *aff'd in part and rev'd in part*, 961 F.2d 390 (2d Cir.1992), *petition for cert. filed*, Aug. 11, 1992.

them individually with regard to what he has done,] to determine if a coercive civil fine stands a chance. And if it does, I certainly intend to go that route. But I suggest that at least one of the defendants has crossed the Rubicon, and it is my job to maintain order on the other side of the river.

July 16 Hearing Transcript at 10 (brackets indicate statements made by the Court not quoted by defendant in his Memorandum in Support).

> (3) [Counsel for defendants] ha[s] another problem. Where do you think your clients are going to be pending these elongated proceedings? Going around the country to do what I believe they have been doing and flouting the power of the Court?

July 16 Hearing Transcript at 27.

As can be seen from the expanded excerpts above, Terry does not always present the July 16 Hearing Transcript excerpts in context. For example, Terry correctly indicates that the Court said, "... as far as Randall Terry is concerned the next step will have to be the imposition of criminal sanctions...." July 16 Hearing Transcript at 8. Defendant neglects to point out, however, that the Court continued by stating, "I intend, *if this matter is proved*, to impose those sanctions upon him." *Id.* (emphasis added).

This Court has made clear it does not intend to prejudge the defendant on the issues presented in this case. As the Court indicated at the July 16 Hearing, "I will tell you one thing: if [Randall Terry] goes to trial before me, he will be presumed innocent. I don't just accept proposed findings, I don't just accept proposed restraint." July 16 Hearing Transcript at 17.

In support of his second assertion, that the Court has already expressed a willingness to find him guilty, defendant focuses on the following comment made by this Court at the July 16 Hearing:

> Counselor, listen carefully, please. We are now over the fetus thing. They have done it. It is a fait accompli.

July 16 Hearing Transcript at 27.

Defendant's second assertion is also unconvincing. The Court's statement expresses no view as to whether Terry is guilty of violating the preliminary injunction. It merely indicates the preliminary view of the Court, based on numerous stories in the local news media, that some incident involving Governor Clinton and an alleged fetus had occurred in the vicinity of his hotel in Manhattan. But this is not a predetermination, on the part of the Court, that the preliminary injunction was violated by *Randall Terry*.

■ As the above Hearing Transcript excerpts make clear, this Court has, in defendant's words, "expressed exasperation" with Terry because of his "continued willingness to violate the mandates of this Court's injunctions." Memorandum in Support at 2–3. However, the fact that a court expresses disapproval for a defendant's known conduct is not enough to require recusal. As Justice Anthony Kennedy wrote when he sat on the Ninth Circuit,

> While bias or prejudice may spring from many sources, often extrajudicial in their origin, ... negative bias or prejudice ... will disqualify only if it is an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fairminded person could not entirely set aside when judging certain persons or causes. *It is an animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct,* unless the attitude is somehow related also to a suspect or invidious motive such as racial bias or a dangerous link such as a financial interest, and only the slightest indication of the appearance or fact of bias or prejudice arising from these sources would be sufficient to disqualify.

*United States v. Conforte*, 624 F.2d 869, 881 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (interpreting 28 U.S.C. § 455) (emphasis added).

As the July 16 Hearing Transcript makes clear, the Court has not prejudged Terry's guilt in the matter presently before it. A thorough review of the *entire* transcript from that hearing would not lead "a rea-

sonable person [to] ... conclude that the court's impartiality might reasonably be questioned," *Apple v. Jewish Hospital and Medical Center,* 829 F.2d at 333, on the basis of personal prejudice or bias. Accordingly, recusal is not required under 28 U.S.C. § 144 or 28 U.S.C. § 455(b)(1).

B. *Recusal Pursuant to 28 U.S.C. § 455(a): Whenever a Judge's "Impartiality Might Reasonably Be Questioned"*

■ Defendant also asserts that this Court should recuse itself pursuant to 28 U.S.C. § 455(a), which provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his *impartiality might reasonably be questioned*

(emphasis added). The grounds for recusal are broader under § 455(a) than they are under §§ 144 and 455(b)(1), *Apple v. Jewish Hospital and Medical Center,* 829 F.2d at 333, extending to those situations where the Court's alleged lack of impartiality creates even an "appearance of injustice," whether or not there is bias or prejudice in fact. *See In re International Business Machines Corp.,* 618 F.2d at 929; *United States v. Conforte,* 624 F.2d at 881; *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1523 (D.Conn. 1991). A motion to recuse under § 455(a) may be made only on the basis of alleged bias or prejudice from an *extrajudicial* source, not upon trial rulings or conduct.[5] *In re International Business Machines Corp.,* 618 F.2d at 929; *Arocena v. United States,* 721 F.Supp. 528, 530 (S.D.N.Y.1989) (Ward, J.), *aff'd,* 902 F.2d 1556 (2d Cir.), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990).

■ Moreover, as the Second Circuit has noted, "[w]hen ... a party has not alleged any grounds for recusal other than those

relating to the district court's alleged bias or prejudice, those broader grounds [for recusal] are not implicated." *Apple v. Jewish Hospital and Medical Center,* 829 F.2d at 333 (citing *United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980)); *Arocena v. United States,* 721 F.Supp. at 530. Inasmuch as defendant's motion to recuse rests solely on allegations of bias or prejudice on the part of this Court, a motion under § 455(a) is not appropriate in the present case and therefore should not be granted.

■ Furthermore, even if a § 455(a) motion were appropriate, it must be denied on the merits. The standard under § 455(a) is "whether a reasonable person, knowing and understanding all the relevant facts, would conclude that the judge's impartiality might reasonably be questioned." *McCann v. Communications Design Corp.,* 775 F.Supp. at 1523; *see United States v. Lovaglia,* 954 F.2d at 815; *In re Drexel Burnham Lambert, Inc.,* 861 F.2d at 1313.

For the reasons stated in the previous section of this Opinion, concerning that part of the motion seeking recusal pursuant to §§ 144 and 455(b)(1), the Court finds no basis for holding that a reasonable person, knowing and understanding all the relevant facts would conclude that this Court's impartiality in the instant matter might reasonably be questioned. There is no appearance of injustice in the present matter. For this reason, recusal is not required pursuant to 28 U.S.C. § 455(a).

### III. MOTION TO PRESENT CONSTITUTIONAL ARGUMENTS

Defendant contends that the portion of the Preliminary Injunction which enjoins him from "presenting or confronting ...

---

5. The Courts of Appeals are split on the issue of whether the cause of alleged prejudice or bias under § 455(a) must stem from an extrajudicial source. The Supreme Court recently denied certiorari on a case that would have allowed a resolution of this split. In addition to the Second Circuit, the Fourth, Fifth, Sixth, Ninth and Eleventh Circuits all hold that the appearance of judicial bias or prejudice under § 455(a) must

come from an extrajudicial source. *See Waller v. United States,* —— U.S. ——, ——, 112 S.Ct. 2321, 2322, 119 L.Ed.2d 239 (1992) (White, J., dissenting). When undertaking a § 455(a) analysis, only the First Circuit considers the appearance of prejudice or bias originating in judicial proceedings. *Id.* (citing *United States v. Chantal,* 902 F.2d 1018, 1022 (1st Cir.1990)).

Governor Bill Clinton ... with any fetus or fetuses or fetal remains in the City of New York" is unconstitutional because it prohibits him from exercising his First Amendment rights. Terry now moves for leave to present this constitutional argument collaterally as a defense at his criminal contempt proceeding.

██ It is well-established that,

a party subject to a court order must abide by its terms or face criminal contempt. Even if the order is later declared improper or unconstitutional, it must be followed until vacated or modified.... A party may not violate an order and raise the issue of its unconstitutionality collaterally as a defense in the criminal contempt proceeding. Rather, the appropriate method to challenge a court order is to petition to have the order vacated or amended.

*In re Providence Journal Co.*, 820 F.2d 1342, 1346 (1st Cir.1986), *modified on reh'g en banc,* 820 F.2d 1354 (1st Cir.1987), *cert. dismissed sub nom. United States v. Providence Journal Co.,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988) (citing *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)); *see also F.T.C. v. American Nat'l Cellular,* 868 F.2d 315, 317 (9th Cir.1989). This is known as the collateral bar rule.[6]

██ This general rule does have an exception when the underlying order is "transparently invalid." *Walker v. Birmingham,* 388 U.S. at 315, 87 S.Ct. at 1829; *In re Providence Journal Co.,* 820 F.2d at 1347. An order is transparently invalid when the issuing court

is acting so far in excess of its authority that it has no right to expect compliance and no interest is protected by requiring compliance.

The line between a transparently invalid order and one that is merely invalid is, of course, not always distinct. As a gener-

al rule, if the court reviewing the order finds the order to have had any pretence [sic] to validity at the time it was issued, the reviewing court should enforce the collateral bar rule.

*In re Providence Journal Co.,* 820 F.2d at 1347.

██ Although reasonable minds may disagree as to whether all or part of the Preliminary Injunction is unconstitutional, the Court cannot say, upon reflection, that its order had no pretense to validity at the time of issuance or that the Court "act[ed] so far in excess of its authority that it has no right to expect compliance." *Id.* In contrast to the situation in *Providence Journal,* the instant matter is not a case of a court imposing a prior restraint on *pure* speech, a judicial act which would be transparently invalid. *In re Providence Journal Co.,* 820 F.2d at 1348, 1353. The alleged presentation or confrontation at issue in this case involves a classic example of speech intertwined with conduct. An injunction against speech in the form of conduct is not transparently invalid, because such an injunction may embrace constitutionally legitimate state concerns. *See Walker v. Birmingham,* 388 U.S. at 315–16, 87 S.Ct. at 1829–30; *In re Providence Journal Company,* 820 F.2d at 1348. For this reason, the Court finds that the Preliminary Injunction is not transparently invalid. Accordingly, the collateral bar rule should apply in the instant matter.

██ Furthermore, the *Providence Journal* court, sitting en banc, announced in dictum that, even when a party believes a court order to be transparently invalid, the party must demonstrate that it has made a "good faith effort to seek emergency relief from the appellate court" in order to avoid application of the collateral bar rule. *In re Providence Journal Co.,* 820 F.2d 1354, 1355 (1st Cir.1987) (en banc), *cert. dismissed sub nom. United States v. Providence Journal Co.,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). This

---

**6.** This Court has neither found, nor been directed to, any Second Circuit case law on the issues raised in this motion. For this reason, the Court treats these issues as matters of first impression in this circuit, with appropriate guidance from the Supreme Court and other circuits.

Court adopts the dictum of the First Circuit, and holds that, even if Terry believed all or part of the Preliminary Injunction to be transparently invalid, he was obligated to make a good faith effort to seek emergency relief from the Second Circuit before violating the injunction.

In the instant case, Terry, despite advice and detailed instructions from the Court in this regard,[7] made no such effort to directly appeal the constitutionality of the Preliminary Injunction. Therefore, even if all or part of the Preliminary Injunction were "transparently invalid," he cannot avail himself of this exception to the collateral bar rule.

▆ In further support of this motion, Terry points to a separate provision of the Preliminary Injunction which provides that, "nothing in the Court's Order should be construed to limit defendants and those acting in concert with them from exercising their legitimate First Amendment rights." Preliminary Injunction at 5 ("the First Amendment Provision"). He asserts that, because this provision was included in the Preliminary Injunction, consideration of his First Amendment arguments is necessary, by definition, in order to determine the scope of the injunction and to determine whether defendant's alleged activity violates that injunction.

The Preliminary Injunction's prohibition against "presenting or confronting ... Governor Bill Clinton ... with any fetus or

7. The extent of the Court's advice and instructions can be seen in the following colloquy from the July 13 Hearing:
    Mr. Mylott: Without waiving any right to appeal this issue and present my total opposition to the whole issue, and not to drag out this proceeding any farther, I will for this purpose consent to your "presenting and confronting" language.
    The Court: On that subject, I checked and ascertained that the United States Court of Appeals for the Second Circuit is sitting this week on the 17th floor.
    Mr. Mylott: Thank you very much, your Honor.
    The Court: They don't sit every week during the months of July and August, but I checked to be certain that you would have some place to go if you felt unduly restricted or unlawfully restrained by what I was going to do.
    ....

fetuses or fetal remains in the City of New York" ("the Restraint on Presentation Provision") was the subject of considerable discussion at the July 13 Hearing, and if counsel for Terry had any doubt as to this prohibition's meaning or scope, he had ample opportunity to raise questions and seek clarification at that proceeding. Indeed, the language first proposed by the Court at the July 13 Hearing was more limited: it would have enjoined defendant from "[c]onfronting ... Governor Bill Clinton...." July 13 Hearing Transcript at 48. The Court then engaged in the following discussion with Terry's counsel:

> Mr. Mylott: With respect to adding this new paragraph, I do not see the need for it, your Honor, and I have trouble with the word "confronting." I do not know what that means.... So I think that using the word "confronting" is vague your Honor. I would oppose that. I oppose the entire paragraph as totally unnecessary.
>
> The Court: Would you prefer the words "presenting or confronting"? In other words that pretty much covers the waterfront, presenting or confronting either with any, certainly.
>
> ....
>
> Mr. Mylott: Without waiving any right to appeal this issue and present my total opposition to the whole issue, and not to drag out this proceeding any farther, I

The Court: ... I think it appropriate, Mr. Mylott, that you make an application for a stay which I would then be disposed to deny which would then permit you if you wish to take the matter to the Second Circuit.
....
The Court: The application for a stay of the new paragraph 7 is denied. I would note that the document counsel has now constitutes a preliminary injunction which is appealable as of right to the United States Court of Appeals for this circuit.
As I noted earlier, it is my understanding that the Court of Appeals is in session this week. I believe the usual motion day of the court is Tuesday which, of course, is tomorrow.
In any event, despite the fact that it is the 13th of July, there are appellate judges available to consider any emergency application.
July 13, 1992 Hearing Transcript at 53, 55, 56.

will for this purpose consent to your "presenting and confronting" language. *Id.* at 52–53. On the basis of this dialogue, the Court modified its proposed language for the preliminary injunction by adding a prohibition on "presenting." Terry's counsel did not indicate any perceived ambiguity or vagueness in that word choice. Furthermore, even if a party believes an injunction to be unconstitutionally vague, "the way to raise that question [is] to apply to the ... courts to have the injunction modified or dissolved," not to raise that point collaterally in a contempt proceeding. *Walker v. Birmingham,* 388 U.S. at 317, 87 S.Ct. at 1830.

There is no indication from the July 13 Hearing that the Court found the Restraint on Presentation Provision to be negated by, or inconsistent with, the First Amendment Provision. If counsel for Terry had believed these two provisions to be inconsistent or that the latter negated the former, this assertion should have been raised either at the July 13 Hearing or in an appeal to the Second Circuit prior to the alleged incident with Governor Clinton. Neither course of action was taken.

This Court finds that Terry is alleged to have violated a clear and unambiguous provision of the preliminary injunction, namely a prohibition on "presenting or confronting ... Governor Bill Clinton ... with any fetus or fetuses or fetal remains in the City of New York." This prohibition on speech involving conduct was not "transparently invalid" nor did the Court indicate that it was inconsistent with, or negated by, the First Amendment Provision. The time to present arguments based upon the constitutionality or internal consistency of all or part of the Preliminary Injunction was at the time of its issuance or on appeal of the Preliminary Injunction *prior* to violating its terms. Accordingly, the motion to present constitutional arguments is denied.

## CONCLUSION

For the reasons stated herein, defendant's motions to recuse, pursuant to 28 U.S.C. §§ 144 and 455(a) & (b)(1), and to present arguments that the Preliminary Injunction was in violation of the First Amendment are denied.

It is so ordered.