### UNITED STATES v. GAMEWELL CO. et al.

**Cr. No. 50–178.**

United States District Court
D. Massachusetts.

Jan. 25, 1951.

As amended Feb. 1, 1951.

John J. Donnelly, Jr., Sp. Asst. to the Atty. Gen., Vincent A. Gorman, Sp. Atty., William Amory Underhill, Acting Asst. Atty. Gen., Sigmund Timberg, Chief, Judgments and Judgment Enforcement Section, Edwin H. Pewett, Asst. Chief, Judgments and Judgment Enforcement Section, all of Washington, D. C., George F. Garrity, U. S. Atty., Boston, Mass., for plaintiff.

Henry E. Foley, Foley, Hoag & Eliot, Charles B. Rugg and Ropes, Gray, Best, Coolidge & Rugg, all of Boston, Mass., for defendants.

SWEENEY, Chief Judge.

This is a criminal and civil contempt proceeding brought by the United States against the Gamewell Company and two individuals, Philbrick and McCarthy. Philbrick is the President and General Manager of the corporation and McCarthy is the General Sales Manager. The contempt proceedings grew out of the alleged violations of a consent judgment entered in this Court on March 22, 1948, all of these defendants having been parties to that action. Much of the evidence in this case appears in the stipulations which the Court adopts as its Findings of Fact as far as they go. Additional testimony was taken at a lengthy hearing. We are concerned here with allegations of both civil and criminal contempt. Ordinarily it might be sufficient to accept one classification and dispense with the other, but in the instant case we have both a corporation and two individuals who guide the corporation. The United States is the complainant and seeks a change in the defendants' conduct so that it will comply with Section V (G) of the consent judgment. Whether we try to dif-

---

7. Cf. United States Fidelity & Guaranty Co. v. Yeates, 217 Ala. 150, 115 So. 174.

ferentiate between the two classes of contempt by inquiring whether the relief sought is punishment or remedial, see Gompers v. Buck's Stove & R. Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, or attempt to differentiate between the two by looking to the form of the proceeding, whether it be a private or public contempt, we reach the same end result, and that is that there should be in this case an adjudication of both the civil and criminal contempts. The action desired by the United States on the part of this corporation is both to remedy its course of conduct to conform to the decree and to punish for the past violations.

### Findings of Fact

The defendant, Gamewell Company, is a manufacturer of fire alarm equipment with a plant in Newton, Massachusetts, and field offices located in seven cities throughout the United States. It employs about thirty field representatives. The defendants, Philbrick and McCarthy, during the period covered by the alleged offenses, were actively engaged in the direction, management, policies and activities of the defendant Gamewell, and they authorized, ordered, approved, performed, or ratified the policies and acts of the defendant Gamewell Company. The field representatives were required to submit reports of their activities to Philbrick and McCarthy at the main plant, giving current and adequate information concerning their activities in the field, so that it can be fairly found as a fact that the actions of the field representatives as reported to the home office were approved and ratified by the officers personally and by them for the company.

When the consent judgment was entered it sought to prescribe a class of conduct which Gamewell and its employees might follow that would not be violative of the antitrust laws. Section V (G) which is alleged herein to have been violated in four different localities reads as follows:

(* * * enjoined and restrained from)

"Offering to furnish or sell, or furnishing or selling, apparatus or equipment appropriate for use in connection with public fire alarm systems, or installation or engineering services in connection therewith, to a prospective purchaser, without cost or below the cost of doing business. However, where the prospective purchaser does not purchase from Gamewell apparatus or equipment appropriate for use in connection with public fire alarm systems, defendant Gamewell may, at its option, consistently with this subsection, furnish such engineering services on any charge or donation basis, if lawful, *provided* it makes an otherwise completely unrestricted and unconditional grant of such services to such prospective purchaser. In all bids submitted by defendant Gamewell for any contract for the furnishing or selling of apparatus or equipment appropriate for use in connection with public fire alarm systems, the cost of all relevant engineering services furnished or sold, or to be furnished or sold, shall be separately and specifically stated. No installation or engineering services furnished pursuant to the provisions of this subsection shall contain any information concerning the product of any specific manufacturer or distributor (including defendant Gamewell) of apparatus or equipment appropriate for use in connection with public fire alarm systems;"

The language quoted does not seem difficult to read and understand. It starts out with a complete prohibition against offering to furnish or sell, or furnishing or selling, engineering services without cost or below the cost of doing business. The next section takes into account a situation where Gamewell is not the successful bidder or does not bid at all, and permits a gift of engineering services at the option of the company. The next sentence provides that in submitting a bid Gamewell must show the cost of all engineering services furnished or sold, and each must be separately and specifically stated. I do not think that the sentence admits of a construction that would allow the bid to be separated from the cost figures, for it states that, "In all bids * * * the cost * * * shall be separately and specifically stated." Counsel for the defendant placed a different contemporaneous construction upon this sentence than I do. I

cannot agree with his construction. Certainly it would accord more with the spirit of the consent judgment to read this sentence so that the bid contains the costs. Counsel for the defendant in making suggestions for rulings of law to be made by the Court tries to interpret this third sentence of Section V (G) as meaning that they shall merely state the cost of the engineering services without collecting it. This of course is directly contrary to the opening sentence of that paragraph. In another request they seek to limit the coverage of the second, third, and fourth sentences of Section V (G) to pre-contract engineering services. With this I cannot agree, for the third sentence refers to "the cost of all relevant engineering services furnished or sold, or to be furnished or sold." The last sentence of the paragraph prohibits the inclusion in any engineering services of information concerning any specific manufacturer or distributor.

Shortly after the entry of the consent judgment, counsel for Gamewell advised it in writing as follows:

"Under Section V (G) of the Consent Decree we may make engineering surveys as part of our sales promotion and submit them to prospective customers without sending copies to competitors as provided in Section VI for certain other types of information.

"If we later submit a bid on the project covered by such a survey, we must state with our bid, in a separate letter if desired, the estimated cost of the survey prepared for that project. An engineering survey must not be used as a means to avoid the provisions of Section VI-VII and VIII but otherwise the information included in it is not restricted in any way provided it omits reference to any manufacturer's names or numbers in describing apparatus or equipment. (Pet. Ex. No. G–64; Tr. 122, 123)"

Philbrick and McCarthy embodied the above in a field memorandum, adding the following: "Attached is a typical summary list of fire alarm equipment such as may have been used prior to the decree. The listing marked "A" contains manufacturer's names and catalog references, which are not now permitted. The listing marked "B" contains the same apparatus listing as "A", but has been modified to conform to the provisions of the decree. (Pet. Ex. No. G–64)"

To test if there has been a contempt of any nature, it will now be necessary to review the conduct of these defendants in the light of the plain language of the injunction covered in Section V (G) of the consent judgment.

### New Bern, North Carolina

On October 16, 1948, the City Manager of New Bern, North Carolina, wrote to the Gamewell Company at its home office, saying that he had been informed that Gamewell would send a representative to his city to make a survey of the fire alarm system without any obligation. He further stated that if this understanding was correct, he would like to have Gamewell send a representative there. Thereafter a representative of the Gamewell Company got in touch with the New Bern authorities and prepared blueprints. In furnishing information to New Bern it referred to particular manufacturers' products. After having furnished the engineering services, Gamewell submitted a formal bid on April 18, 1950, which did not include a statement of the cost of engineering services previously rendered by Gamewell. Someone in behalf of Gamewell delivered a letter stating the cost of the engineering services previously furnished. The bid had been submitted over Philbrick's signature. The information as to cost of engineering services was not over his signature. New Bern was not billed for the cost of the engineering services. I find as a fact that the defendants offered to, and did, furnish engineering services without cost, did not state separately and specifically within their bid the cost of the engineering services, and did furnish information regarding the products of specific manufacturers. The engineering services included blueprints, literature, sketches, schematic diagrams, pictures, explanatory text, dimensions, instructions as to "standard practice for the planning, installation and maintenance of

Gamewell fire alarm and police signaling systems", and other material. The explanation of the defendants that all of this was not engineering but missionary sales work does not strike me as a reasonable interpretation of what they were doing. One of their witnesses referred to this work as what might be "engineering services in the mind of a salesman", but that from the viewpoint of an engineer they were mere sales talks and preparations. To my mind they were prohibited by Section V (G) of the decree.

In addition to the above it appears on the books of the defendant company that the cost of its engineering survey and analysis in New Bern was $152.52. The letter that was handed by the salesman to the City Manager contained the statement that the cost to it was $50.00. The City of New Bern awarded the contract to the Gamewell Company. They were the highest of three bidders.

### Vancouver, Washington

On September 14, 1949, Gamewell's sales engineer wrote a letter to the Mayor of Vancouver offering services at no cost or obligation to the City in engineering and laying out a fire alarm system. After some discussion in which the Vancouver officials told Gamewell representatives that they were going to install a fire alarm system, on December 15, 1949, Gamewell, through its sales engineer, submitted a large amount of technical matter including a bound booklet entitled, "Recommendations for Fire Alarm System", wherein there were many references to Gamewell products as such. The recommendations, accompanied by much other technical material, maps, and diagrams, constituted an integrated document and was an engineering survey of the Vancouver fire alarm system. This was engineering service without any doubt.

On January 14, 1950, the Mayor of Vancouver called upon Gamewell to furnish, and they did furnish, supplemental technical data which constituted engineering service. This was again repeated the following month. In April of 1950 Gamewell, through Philbrick, submitted a bid to the City of Vancouver. It was the highest of three bids and no contract as yet has been awarded. The bid did not include a statement of the cost of engineering services previously rendered to the City, although the sales engineer did advise the Mayor of Vancouver by letter that the total cost was in the vicinity of $623.00 "all of which was furnished at no cost or obligation to the city." I find that the defendants did offer engineering services without cost, that they did furnish engineering services without cost, did not state separately and specifically within their bid the cost of engineering services, and did furnish information regarding the products of specific manufacturers.

### Evansville, Indiana

On March 12, 1949, the "superintendent of fire alarm" of the City of Evansville notified the Gamewell field office in Chicago that they were in the market for approximately 85 fire alarm boxes, and requested Gamewell to send one of its engineers to see him. The field office replied to the effect that their Mr. Flanigin would call at Evansville shortly. Flanigin made a survey of the requirements and shortly thereafter mailed to the home office of Gamewell certain alternate plans for Evansville with some engineering data. Under date of May 17, 1949, the field representative submitted an engineering report to the City of Evansville containing three recommendations of a technical nature. This I consider to be an engineering service, and inasmuch as it contained information concerning the products of Gamewell and other fire alarm manufacturers, it is violative of the fourth sentence of Section V (G) of the consent judgment. Standing alone this violation might not be so pronounced, but as it is associated with others it is noted. The City of Evansville has not yet issued invitations to bid so it cannot be said that Gamewell has violated any of the other three sentences of Section V (G). I do not find that they have made an offer to furnish engineering services without cost. I find that they have furnished engineering services, but in the event that they elect not to bid and make a gift of

their engineering services to the City of Evansville, it would appear that Section V (G) gives them this right.

### Reno, Nevada

On October 12, 1948, Gamewell's sales engineer offered to send an engineer to Reno, Nevada, to make an up-to-date survey of the city's fire alarm system needs without obligation to the city. On December 22, 1948, the defendant Gamewell submitted to the City of Reno "an engineering report which contains recommendations for improvement of your City fire alarm facilities." In addition to the enclosed engineering report was "a map showing these recommendations graphically." The recommendations and the enclosure were clearly engineering services and were so described by Gamewell in its initial letter. The plan itself was a mere map and the letter, standing alone, might be construed to be a mere offer to sell, but taking into consideration all of the activities of Gamewell with relation to this fire alarm system, I could not find otherwise than that they made an engineering survey for the City of Reno. This report also contained information furnished by the defendants concerning the products of the defendant Gamewell and other suppliers of fire alarm equipment. The proposed cost of the recommendations submitted by Gamewell was vastly in excess of the maximum noncompetitive figure of $500.00 set out in the city's ordinances. The City of Reno has not issued invitations to bid as yet. I find that the defendants, through their authorized agents and servants, offered engineering services to the City of Reno without cost, and did furnish information regarding the products of specific manufacturers.

I find that the course of conduct pursued by these defendants and dictated by Philbrick and McCarthy was such as to constitute defiance of the Court's order. There has been no open and direct defiance of the Court's order, but through twisted interpretations of the paragraphs of the decree and tortured constructions of its phrases and sentences the defendants have willfully pursued a course which was in violation of the decree. The fact that the offer of a free engineering survey to the City of Reno was made by the sales engineer as distinguished from these defendants is of little consequence, for I find that the defendant Philbrick was kept constantly advised of what was being done. The defendants willfully adopted and adhered to an interpretation of Section V (G) which would render the entire decree a nullity if their interpretation were correct. The suggested Findings of Fact submitted by the defendants are denied insofar as they are not substantially set out in the above findings.

### Conclusions of Law

The defendants' requests for rulings of law, seven in number, are all denied. Request No. 3, which was briefed separately by the defendants, is denied because, as pointed out in the Findings of Fact, the third sentence of Section V (G) refers to "engineering services furnished or sold, or to be furnished or sold."

From the foregoing Findings of Fact I conclude and rule that all of these defendants are guilty of contempt of court, both civil and criminal. Upon application by any of the parties, a date will be assigned for argument on the question of the disposition of these contempts.