UNITED STATES of America

v.

Randall TERRY.

No. 92 Cr. Misc. # 1 Pg. 46 (RJW).

United States District Court, S.D. New York.

March 10, 1993.

See also 802 F.Supp. 1094, 806 F.Supp. 490.

Robert Abrams, Atty. Gen., Sanford M. Cohen, Edward D. Saslaw, Robert R. Reed, Shelley B. Mayer, Asst. Attys. Gen., New York City, for U.S.

Jay Alan Sekulow, Washington, DC, Thomas P. Monaghan, New Hope, KY, for defendant.

ROBERT J. WARD, District Judge.

At the conclusion of a hearing held on July 13, 1992 ("the July 13 Hearing"), this Court issued a preliminary injunction in *People of the State of New York v. Operation Rescue National,* 92 Civ. 4884 (RJW) ("the Preliminary Injunction"). Randall Terry, one of the named defendants in that civil action, is now charged with two counts of criminal contempt for violating two provisions of the Preliminary Injunction. Following a non-jury trial and upon careful consideration of the trial record, including arguments made in the post-trial briefs and in the summations, the Court makes a general finding of guilty with respect to Count One of the Notice of Charge and not guilty with respect to Count Two of the Notice of Charge. In reaching its verdict, the Court makes the following special findings of fact pursuant to Rule 23(c), Fed. R.Crim.P.

**A. *Procedural History***

The Preliminary Injunction enjoined the defendants in the underlying civil action, including Terry, and all others acting in their behalf or in concert with them, from, *inter alia,*

> presenting or confronting either Governor Bill Clinton or Senator Albert Gore with any fetus or fetuses or fetal remains in the City of New York or elsewhere in the Southern District of New York between [12:45 P.M. on July 13, 1992] and 12:00 midnight on July 17, 1992....

Preliminary Injunction, Second Decretal Paragraph, Clause (7) ("Clause (7)").

In addition, the Fourth Decretal Paragraph of the Preliminary Injunction provided:

IT IS FURTHER ORDERED that defendant organizations and their officers and agents, and all individual defendants and those acting in concert with them, shall make good faith efforts to instruct all organizations and individuals they believe to be planning to participate in any of the activities enumerated in clauses (1) through (7) of the second decretal paragraph above not to engage in the proscribed activities....

In Count One of the Notice of Charge, the government[1] alleges that, in violation of the Preliminary Injunction and 18 U.S.C. §§ 2[2] and 401(3),[3] Terry "aided, abetted, counseled, commanded, induced, procured or caused" Harley David Belew to present or confront Governor Bill Clinton with a fetus or fetal remains on July 14, 1992 in the Southern District of New York. Notice of Charge ¶¶ 2–3.

In Count Two of the Notice of Charge, the government alleges that, in violation of the Preliminary Injunction and 18 U.S.C. § 401(3), Terry "had knowledge that Harley [David] Belew was planning to present or confront Governor Bill Clinton with a fetus, fetuses or fetal remains in the City of New York on or before July 17, 1992 and did not make good faith efforts to instruct Mr. Belew not to engage in that activity." Notice of Charge ¶¶ 6–7.

Following trial on November 19 and 20, 1992, the parties filed post-trial briefs with the Court and summations were heard on March 5, 1993.

### B. Elements of the Crime

■ This Court may find Terry guilty of criminal contempt only if the government has proven beyond a reasonable doubt that Terry willfully violated the specific and definite terms of the Preliminary Injunction. See United States v. Twentieth Century Fox Film Corp., 882 F.2d 656, 659 (2d Cir.1989), cert. denied, 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990).

### 1. Terms of the Injunction

The Court finds that the terms of the Preliminary Injunction were specific and definite as to the time, place and type of conduct enjoined, as well as to who was enjoined from engaging in—or enjoined to engage in—such conduct.[4] See United States v. Terry, 802

---

1. This matter is being prosecuted by the New York State Attorney General. See United States v. Terry, 806 F.Supp. 490 (S.D.N.Y.1992).

2. 18 U.S.C. § 2 provides,

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. 18 U.S.C. § 401 provides, in relevant part,

 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

 ....

 (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

4. On January 13, 1993, six months after this Court issued the Preliminary Injunction, the United States Supreme Court decided Bray v. Alexandria Women's Health Clinic, — U.S. —, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), holding that the first clause of 42 U.S.C. § 1985(3) does not provide a federal cause of action against persons obstructing access to abortion clinics. The Bray court indicated, however,

[Petitioners] contend that respondents' § 1985(3) claims were so insubstantial that the District Court lacked subject-matter jurisdiction over the action, including the pendent state claims; and that the injunction should therefore be vacated and the entire action dismissed. We do not agree. While respondents' § 1985(3) causes of action fail, they were not, prior to our deciding of this case, "wholly insubstantial and frivolous," so as to deprive the District Court of jurisdiction.

Id. — U.S. at —, 113 S.Ct. at 768 (quoting Bell v. Hood, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Inasmuch as the Preliminary Injunction was issued prior to the Bray decision, and was not, therefore, based on claims that were, at the time, "wholly insubstantial and frivolous," this Court is not divested of subject-matter jurisdiction.

Furthermore, as the government notes, the plaintiff in People of the State of New York v. Operation Rescue National, 92 Civ. 4884 (RJW) sought relief under the second clause of § 1985(3) (the "preventing or hindering" clause), whereas the Bray court only expressly decided the applicability of the first clause of § 1985(3) (the "depriving" clause). This provides an independent basis for this Court's conclusion that plaintiff's claims in the underlying civil action were not so "wholly insubstantial and frivolous" as to divest this Court of subject-matter jurisdiction.

F.Supp. 1094, 1103 (S.D.N.Y.1992) ("This Court finds that Terry is alleged to have violated a clear and unambiguous provision of the preliminary injunction, namely a prohibition on 'presenting or confronting ... Governor Bill Clinton ... with any fetus or fetuses or fetal remains in the City of New York.' ").

### 2. Notice

Defendant had notice of the Preliminary Injunction. He was represented by counsel, Raymond L. Mylott, at the July 13 Hearing. July 13 Tr. at 3. At the conclusion of the July 13 Hearing, Clause (7) was read into the record in the presence of Mr. Mylott, who also received a copy of the Preliminary Injunction. *Id.* at 54–55. Moreover, as this Court has already instructed Terry, in a related civil matter, "[p]arties are charged with a duty to monitor the progress of their cases and to ascertain the terms of any order entered against them." *New York State NOW v. Terry,* 697 F.Supp. 1324, 1332 n. 9 (S.D.N.Y.1988) (citing *Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 109 (2d Cir.1987); *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 808–09 (2d Cir. 1981)), *aff'd in part and modified in part,* 886 F.2d 1339 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

Defendant argues that the Preliminary Injunction was issued in a "disordered and illegible condition." The Court disagrees. A review of Government Ex. 10, a copy of the Preliminary Injunction, indicates that the handwriting is legible, including the provision enjoining defendant from "presenting or confronting" Governor Clinton or Senator Gore with a "fetus, fetuses or fetal remains." Furthermore, as already noted, this provision was read into the record at the conclusion of the July 13 Hearing, in the presence of Terry's attorney.

Finally, the parties stipulated to the admission of Patrick Mahoney's deposition testimony in the civil action, *People of the State of New York v. Operation Rescue National,* 92 Civ. 4884 (RJW), as the testimony Mahoney would have given if called to the stand in this matter. Mahoney testified that on the evening of July 13, he discussed the hearing held before this Court earlier in the day and the Preliminary Injunction with Terry, including the fact that the Preliminary Injunction was "outrageous" and "restricted ... free speech." Defendant has not challenged Mahoney's account of this discussion. Government Ex. 22 at 62, 67.

### 3. Willful Violation of the Injunction

In connection with the alleged incident itself, the government must prove, beyond a reasonable doubt, that Governor Clinton was (a) "present[ed] or confront[ed]" with (b) a "fetus or fetuses or fetal remains." It is uncontested that Terry did not present or confront Governor Clinton with a fetus himself. Therefore, in order to obtain a conviction on Count One, the government must also prove, beyond a reasonable doubt, that (c) Terry willfully aided, abetted, counseled, commanded, induced, procured or caused[5]

---

**5.** Defendant notes that the Second Decretal Paragraph, Clause (5) of the Preliminary Injunction ("Clause (5)") enjoins him only from "attempting to take, or inducing, encouraging, directing, aiding, or abetting in any manner others to take, any of the actions described in *clauses (1) through (4)* above" (emphasis added). Defendant argues that, because Clause (5) does not refer to Clause (7), the Preliminary Injunction did not enjoin him from "indirectly" violating Clause (7). Based on this conclusion, Terry asserts that he can only be held in criminal contempt of court for violating Clause (7) if he personally presented or confronted Governor Clinton with a fetus.

If the Preliminary Injunction were interpreted in a legal vacuum, Terry's assertion would be correct. However, the statutory overlay does make it crime for a person to "aid[ ], abet[ ], counsel[ ], command[ ], induce[ ] or procure[ ]"

the commission of an offense against the United States, 18 U.S.C. § 2(a), or to "willfully cause[ ] an act to be done which if directly performed by him or another would be an offense against the United States...." 18 U.S.C. § 2(b). Under 18 U.S.C. § 401(3), violation of the terms of the Preliminary Injunction was an offense against the United States. Therefore, Terry may be found guilty of contempt for, in his words, "indirectly" violating the terms of Clause (7).

Furthermore, it was not necessary for this Court to have notified Terry of the operation of § 2 or § 401(3). As the Second Circuit has ruled:

"[T]he crime of criminal contempt requires a specific intent to consciously disregard an order of the court." There is no requirement that the defendant be shown to have known of, and intended to violate, the statute which

the commission of this alleged act. Finally, to obtain a conviction under Count Two, the government must prove, beyond a reasonable doubt, that (d) Terry believed Belew planned to violate the Preliminary Injunction and did not make a good faith effort to instruct Belew not to do so.

### a. The Alleged Presentation or Confrontation

■ The Court finds, beyond a reasonable doubt, that Harley David Belew presented Governor Bill Clinton with an object, which appeared to be a human fetus,[6] contained in a clear plastic container at approximately 8:00 a.m. on July 14, 1992, on the sidewalk outside an entrance to the Hotel Inter–Continental, in the Southern District of New York.

In making this finding, the Court draws on the testimony of William Patrick Glenn, a special agent with the United States Secret Service; Irving F. Donaldson, a lieutenant with the New York City Police Department; and John T. Wnek, a New York City police officer. All three witnesses observed the events that occurred immediately after Governor Clinton exited the Hotel Inter–Continental on the morning of July 14, 1992. In addition, the Court has examined two photographs taken at that time. Government Exs. 1 & 2.

The evidence establishes that, as Governor Clinton was entering his limousine at approximately 8:00 a.m on July 14, a man, later identified as Belew, called out to Governor Clinton, asking him for an autograph. When Governor Clinton approached Belew to oblige, Belew handed him a folded newspaper and a ball point pen. Concealed beneath the

newspaper was a white plastic bag. Once Governor Clinton had taken the newspaper and the pen, Belew reached into the plastic bag and removed a clear plastic container. Inside the clear plastic container was an object which appeared to be a human fetus. At this point, a photograph, Government Ex. 1, shows Belew's hands extended toward Governor Clinton and holding the clear plastic container so that Governor Clinton could see the object in the container. Belew then said to Governor Clinton, "What about the babies?".

Webster's New World Dictionary of the American Language, Second College Edition defines "present" as, *inter alia,* "to offer for viewing or notice; exhibit; display; show." There is no reasonable doubt in the Court's mind that Belew "presented" the clear plastic container to Governor Clinton, or, put in terms of the dictionary definition, he "offer[ed the container] for viewing or notice" by Governor Clinton. Belew purposely removed the clear plastic container from the white plastic bag and made a comment to Governor Clinton relating to the contents of the clear plastic container. Furthermore, because the container was clear, so that it contents were visible, any presentation of the container is, by definition, a presentation of its visible contents. Therefore, Belew also presented the object in the container to Governor Clinton.

Defendant asserts that Belew did not present Governor Clinton with the contents of the clear plastic container because Governor Clinton "exposed" himself to the clear plastic container by taking the newspaper from Belew's hands.[7] This argument is not convinc-

makes it a crime to consciously disregard an order of the court. In essence, [the defendant] sought a charge to the effect that ignorance of "the law" would be a defense. [The trial judge] was correct in refusing to give such a charge.
*United States v. Berardelli,* 565 F.2d 24, 30 (2d Cir.1977) (citations omitted), *quoted in United States v. Remini,* 967 F.2d 754, 757 (2d Cir. 1992).
Finally, Terry's counsel was present throughout the July 13 Hearing, when the Preliminary Injunction was issued. If he had any questions or required any clarification concerning the interplay between Clause (5) and 18 U.S.C. §.2,

there was ample opportunity to raise such concerns at that time.

**6.** Whether the object presented to Governor Clinton actually was a fetus or fetal remains is discussed in subsection B.3.b., *infra.*

**7.** Defendant's argument conflicts with an account of the incident contained in a press release issued on his letterhead on July 14:

An Operation Rescue activist has handed an aborted baby to Governor Bill Clinton, at approximately 8:30 A.M. this morning as Governor Clinton was exiting the Intercontinental Hotel where he is staying. Operation Rescue

ing for two reasons. First, Lieutenant Donaldson testified that, once Governor Clinton took the newspaper from Belew's hands, Belew removed the clear plastic container from a white plastic bag.[8] A bag of that description is visible in Belew's hand in the photograph of Belew and Clinton. Government Ex. 1. Therefore, Belew presented Governor Clinton with the fetus by removing the clear plastic container from the white plastic bag after Governor Clinton had taken the newspaper. Second, assuming, *arguendo*, that Governor Clinton's acceptance of the newspaper was the final act which exposed him to the object in the clear plastic container, this Court still finds that Belew presented the object in the container to Governor Clinton. By asking Governor Clinton to autograph the newspaper, it was Belew's intention that Governor Clinton would take the newspaper, thereby exposing what lay underneath, in much the same way that a person might give a boxed and wrapped gift to another with the expectation that the recipient will unwrap the gift and "expose" himself to what is inside the box. In such a case, the giver has "presented" the gift to the recipient. Likewise, the Court finds, beyond a reasonable doubt, that Belew presented the clear plastic container and its contents under a newspaper to Governor Clinton with the expectation that Governor Clinton would remove the newspaper and "view[ ] or notice" the package's contents.

Accordingly, the government has met its burden of proof in establishing that Belew presented Governor Clinton with the clear plastic container and its contents.

### b. The Alleged Fetus

■ The government has proven, beyond a reasonable doubt, that the object in the clear plastic container presented to Governor Clinton was a fetus. This finding is based upon the Court's review of the trial testimony given by Dr. Dennis Smyth, the New York City Medical Examiner who inspected the object contained in the clear plastic container, as well as Dr. Smyth's autopsy report, Government Ex. 6.

The Report of Autopsy, signed by Dr. Smyth on July 16, 1992, states:

"I, HEREBY CERTIFY THAT I, DR. DENNIS SMYTH M.D., CITY MEDICAL EXAMINER II HAVE PERFORMED AN AUTOPSY ON THE BODY OF A *FETUS* AT THE MANHATTAN MORTUARY ON THE 15TH DAY OF JULY 1992.

EXTERNAL EXAMINATION:

The body is that of a ... male *fetus*...."

Government Ex. 6 (underscoring added). Defendant presented no testimony or other evidence to controvert Dr. Smyth's written finding.

Defendant argues that there is a legitimate question as to whether the object in the clear plastic container was a fetus or a stillborn and that, for this reason, the government has not met its burden of proving that the object was a fetus. The Court disagrees.

The Report of Autopsy does state "DIAGNOSIS: STILLBORN." *Id.* Accordingly, Dr. Smyth found the object to be a stillborn fetus. This does not, as defendant appears to argue, create uncertainty as to what was in the plastic container. Just as a person can be diagnosed as having cancer, a fetus can be diagnosed as stillborn.[9] Despite defendant's arguments to the contrary, nothing in the medical examiner's testimony at trial refutes this conclusion.

In addition, as the government points out, if a dead fetus ceases to be a fetus once it is removed from the uterus, then that part of Clause (7) referring to "fetus or fetuses" would enjoin action which is, for all practical purposes, impossible: a person could not "present or confront" Governor Clinton or

---

activist, Harley David [sic], approached Governor Clinton to request an autograph. At that time *he produced baby Nathan,* a baby boy aborted at 19 weeks gestation.
Government Ex. 19 (emphasis added).

**8.** Although neither Special Agent Glenn nor Officer Wnek mentioned the white plastic bag, their testimony is not inconsistent Lieutenant Donaldson's testimony concerning its existence.

**9.** "Stillborn" can be either an adjective or a noun. Webster's Third New International Dictionary (1981).

Senator Gore with an object which remained in utero. A "defendant may not avoid criminal contempt by 'twisted interpretations' or 'tortured constructions' of the provisions of the order." *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir.1974) (quoting *United States v. Gamewell Co.*, 95 F.Supp. 9, 13 (D.Mass.1951)). By interpreting Clause (7) as only applying to an in utero fetus, Terry has created such a "tortured construction."

Furthermore,

a defendant, if he has doubts as to his obligations under an order, may petition the court for a clarification or construction of that order. While a defendant is, of course, not required to seek such a clarification, a failure to do so when combined with actions based upon a twisted or implausible interpretation of the order will be strong evidence of a willful violation of the order.

*United States v. Greyhound Corp.*, 508 F.2d at 532 (citations omitted).

As noted above, Terry was represented by counsel at the July 13 Hearing. This Court has already indicated that,

[t]he Preliminary Injunction's prohibition against "presenting or confronting ... Governor Bill Clinton ... with any fetus or fetuses or fetal remains in the City of New York" ... was the subject of considerable discussion at the July 13 Hearing, and if counsel for Terry had any doubt as to this prohibition's meaning or scope, he had ample opportunity to raise questions and seek clarification at that proceeding.

*United States v. Terry*, 802 F.Supp. 1094, 1102 (S.D.N.Y.1992).

Finally, the government has met its burden of proving that the fetus examined by Dr. Smyth was the object in the clear plastic container that Belew presented to Governor Clinton on the morning of July 14. Despite the fact that the object in the plastic container was not seized at the time it was presented to Governor Clinton, the government has

proved, beyond a reasonable doubt, that the object displayed by Joseph Foreman at the 9:30 a.m. press conference in the lobby of the Hotel Inter–Continental and later taken by Lieutenant Donaldson from a room on the fourth floor of the Hotel Inter–Continental was the object presented to Governor Clinton.[10] This object was then sent to Dr. Smyth in the Office of Chief Medical Examiner and was later identified as a stillborn fetus.

For all of the above reasons, the Court finds that the object in the clear plastic container presented to Governor Clinton was a fetus, in violation of a specific and definite term of Clause (7) of the Preliminary Injunction.

### c. The Alleged Willful Violation of Clause (7) of the Second Decretal Paragraph

 The government does not allege that Terry directly violated the terms of Clause (7) by presenting or confronting Governor Clinton with a fetus or fetal remains. Rather, defendant is accused of "aiding, abetting, counseling, commanding, inducing, procuring or causing" Belew to act in violation of Clause (7) and 18 U.S.C. §§ 2 and 401(3). Notice of Charge ¶ 3.

*Terry's own uncontested public pronouncements,* both before and after Belew presented the fetus to Governor Clinton, establish, beyond a reasonable doubt, that defendant willfully caused Belew to violate Clause (7). In addition, the government introduced other testimony and evidence establishing Terry's link to the presentation of the fetus. Viewed as a whole, the evidence that Terry willfully caused Belew to violate Clause (7) is overwhelming.

### (i) Terry's Public Pronouncements Prior to July 14

The evidence introduced at trial demonstrated that Randall Terry, prior to July 14, made numerous statements to his supporters

---

**10.** A July 14 press release, issued on Terry's letterhead, briefly describes the incident with Governor Clinton, stating that at the time he approached Governor Clinton, *"[Belew] produced baby Nathan ....* Shortly there after [sic] *the*

*New York City police confiscated baby Nathan."* Government Ex. 19 (emphasis added). By statements on his own letterhead, Terry has provided strong proof of the chain of custody.

and the press concerning his plans to present Governor Clinton with a fetus:

—a statement in a letter dated July 3 and signed by the defendant indicated that "We're planning on having several aborted children with us in NY to bring the Democratic Party and Bill Clinton face to face with the horrifying reality of their position on child-killing." Government Ex. 15;

—the parties stipulated that, if called to the stand, Meg Handler would have testified that, on July 11, she was present in front of the Eastern Women's Center on East 30th Street in Manhattan, when she observed Randall Terry, Patrick Mahoney, Robert Schenck and Paul Schenck holding a fetus in their hands. A comparison of photographs taken at this scene with the medical examiner's photographs of the fetus presented to Governor Clinton on July 14 establish, beyond a reasonable doubt, that the fetus held by Randall Terry on July 11 was the same fetus that was presented to Governor Clinton and later identified by Dr. Smyth. Ms. Handler would have testified that she heard Randall Terry speak at this location and she heard him say that "he was going to present the fetus to Governor Clinton to show him the victim of choice." Tr. at 175; *see also* Government Ex. 32 (videotape excerpt of July 11 WNBC television news broadcast showing defendant standing in front of abortion clinic on July 11, holding a fetus, and saying, "Our most important mission is to get in Bill Clinton's hands a little dead baby boy who was aborted—the victim of choice.")

—a press release issued by defendant on July 11 in which defendant stated that he and others displayed an aborted child that morning at a press conference outside the Eastern Women's Center in New York City. He also indicated that he and Reverend Schenck said, "our main purpose over the next four days is to place this aborted child into Bill and Hillary Clinton's hands." Government Ex. 16;

—a videotape excerpt from a July 13 television news broadcast on WABC showed Randall Terry, during the afternoon of April 13, saying, "our hope is sometime between now and the end of the convention to place in Bill Clinton's hands the victim of choice—a dead baby." Government Ex. 33;

—Michael Allen Gagne testified that, on the evening of July 13, he attended an Operation Rescue rally at St. Agnes Church. He testified that Terry spoke at that rally, and that, "[Terry] said that they had the fetus at the hotel, and that they had planned to present the fetus to Bill Clinton." Tr. at 141. Gagne also testified that, during the Operation Rescue rally at St. Agnes church on July 13, Robert Schenck, a defendant in the underlying civil action, "said that he and Randall Terry and Joe Foreman ... were going to present the fetus to Bill Clinton at the hotel for the best media coverage that would be there." *Id.*

(ii) Terry's Public Pronouncements After Presentation of the Fetus

Moreover, after the presentation of the fetus to Governor Clinton, Terry made a number of statements to the press or on his live radio show which demonstrated his active involvement with Belew's violation of Clause (7):

—on his live radio show broadcast within hours of the presentation of the fetus to Governor Clinton, Terry indicated,

And so we made a commitment two days ago, three days ago, that we were going to try to present Governor Clinton with an aborted baby, and this morning, by the grace of God, Harley David [Belew] ... stepped into legendary history when he presented an aborted baby to Governor Clinton.

Government Ex. 28. Defendant then described his own participation in the development of the plan to present Governor Clinton with the fetus:

This is a very sober thing that we have done, folks. *Late last night, we were praying and plotting*—in fact, on Saturday, we were praying and fasting, asking

God to grant us a miracle that we would be able to present this baby to Clinton. *Id.* (emphasis added). Later, defendant described, during a telephone exchange with Belew, the "three-tier plan" that he, Belew and others developed the night before the fetus was presented to Governor Clinton:

> DEFENDANT: *[L]ast night, we came up with a three-tier plan* . . .
>
> BELEW: Right.
>
> DEFENDANT: . . . to present Governor Clinton with this baby. *Plan A was what Harley did.*
>
> . . . . .
>
> So, *thank God, Harley, that you* got up this morning and *went forward with the first tier of the plan. But we had moderate hopes at best that this would work this morning.*

*Id.* (emphasis added).

Later, defendant again tied himself to Belew's violation of Clause (7):

> It's unbelievable that things have worked out, but I'm here in New York, Rev. Mahoney is with me, Rev. Schenck, Rev. Foreman, Harley David, and, by the grace of God, we prayed, we fasted, and this morning, *we were able* to present baby Nathan to Governor Clinton.

*Id.* (emphasis added).

—on a FOX television news broadcast, defendant appears on the steps of the United States Court House on July 16 saying,

> Since *we* tried to present him with an aborted baby, we may be imprisoned. They're trying to crush us because of our 'politically incorrect' speech.

Government Ex. 4B (emphasis added).

**(iii) Relationship Between Terry and Belew**

Finally, the government produced unrefuted evidence which established a close working relationship between Terry and Belew, including: (1) Belew's work for Terry's live radio show and (2) a trip Belew and Terry took to Washington, D.C. in early April of 1992 to be present at "NOW's death march." Government Ex. 14.

**(iv) Conclusion**

Randall Terry proclaimed to his supporters and the press his intention to present a "victim of choice" to Governor Clinton at the Democratic National Convention. Following the events on the morning of July 14, defendant told listeners to his live radio show of his involvement in a three-tier plan to present an "aborted baby" to Governor Clinton. Terry cannot now escape the clear meaning of his own words. Therefore, the government has met its burden of establishing that defendant willfully caused Belew to present a fetus to Governor Clinton.

**d. The Alleged Willful Violation of the Fourth Decretal Paragraph**

 In order to establish a violation of the fourth decretal paragraph and Count Two of the Notice of Charge, the government must prove, beyond a reasonable doubt, that (i) Terry believed that Harley David Belew was planning to violate any of the activities enumerated in clauses (1) through (7) of the second decretal paragraph and (ii) Terry did not make a good faith effort to instruct Belew not to engage in the proscribed activities.

The government has met its burden of proof with respect to the first prong of Count Two: Terry's own statements, described in subsection B.3.c.(ii), *supra,* establish, beyond a reasonable doubt, that Terry believed Belew was planning to present a fetus to Governor Clinton, in violation of Clause (7).

However the government has not proved, beyond a reasonable doubt, that Terry did not make a good faith effort to instruct Belew not to engage in the proscribed activities. The government's burden here is extremely difficult: in order to establish a violation of the fourth decretal paragraph, it must prove a negative, namely that Terry did *not* do something. The government has not done this beyond a reasonable doubt. For example, two telephone calls were placed during the morning of July 14, before the fetus was presented to Governor Clinton, from the room at the Milford Plaza where Terry and Patrick Mahoney were staying to the Hotel Inter–Continental, where Belew was staying. One telephone call commenced at 12:25 a.m.

and the other commenced at 7:43 a.m. No evidence has been presented by either side as to the content of these telephone calls or parties involved. Nevertheless, it is not beyond the realm of possibility that one or both of these calls involved Terry and Belew and that, at one point during the call, Terry may have told Belew not to go forward with the plan to present a "victim of choice" to Governor Clinton, for whatever reason. Given Terry's public statements, such a scenario is rather unlikely. However the Court is not prepared to say that it is not possible, beyond a reasonable doubt.

Short of a complete accounting of all conversations between Terry and Belew from the time of the issuance of the Preliminary Injunction on July 13 to the presentation of the fetus to Governor Clinton on July 14, the government cannot establish with the requisite level of certainty that Terry did not instruct Belew, at some point in time, not to engage in the proscribed activities. Inasmuch as neither Terry nor Belew has testified concerning the content of their conversations during this time period, the government has not met its burden of proof to sustain a conviction on Count Two.

### C. *Findings of Guilt*

#### 1. Count One

In Count One, defendant is charged with violating 18 U.S.C. § 2. As the Second Circuit recently explained, the elements of proof are different under § 2(a) than they are under § 2(b). *See United States v. Concepcion,* 983 F.2d 369, 383–84 (2d Cir.1992). In the instant matter, this Court does not find a violation of § 2(a), but does find a violation of § 2(b).

"Under § 2(a), 'an aider and abetter must share in the principal's essential criminal intent, [and] *the principal must be shown to have had the essential criminal intent.*'" *Id.* at 383 (emphasis added) (quoting *United States v. Elusma,* 849 F.2d 76, 78 (2d Cir. 1988), *cert. denied,* 489 U.S. 1097, 109 S.Ct. 1570, 103 L.Ed.2d 936 (1989)).

The government has not proven, beyond a reasonable doubt, that Belew, the person who presented the fetus to Governor Clinton, had the requisite criminal intent.[11] Therefore, the Court finds Terry did not violate 18 U.S.C. § 2(a).

However, the Second Circuit has indicated that,

[t]he requirements of § 2(b) ... are somewhat different. Whereas § 2(a) speaks in terms of procuring or aiding and abetting the commission of an "offense," and hence requires proof that the primary actor had criminal intent, § 2(b) speaks in terms of causing the actor to perform only an "act." ... Thus § 2(b) adopts the "general principle of causation in criminal law that an individual (with the necessary intent) may be held liable if he is a cause in fact of the criminal violation, even though the result which the law condemns is achieved through the actions of innocent intermediaries." ... Accordingly, the person who actually performed the act need not have had any criminal purpose or intent; if the defendant willfully caused an act that, had he performed it directly, would be an offense against the United States, he may be prosecuted under § 2(b) "even though the agent who committed the act is innocent or acquitted."

*United States v. Concepcion,* 983 F.2d at 383–84 (citations omitted).

Thus, even if Belew is not guilty of any crime in connection with the presentation of the fetus, defendant may still be found guilty under § 2(b). The Court has found: (a) that Terry had notice of the terms of the Preliminary Injunction and (b) that he willfully caused Harley David Belew to violate the specific and definite terms of Clause (7). Accordingly, this Court finds Terry guilty of criminal contempt of court as charged in Count One, in violation of 18 U.S.C. §§ 2(b) and 401(3).

#### 2. Count Two

As discussed in subsection B.3.d., *supra,* the government has not proven, beyond a

---

11. For example, the government did not prove, at trial, that *Belew* had notice of the terms of the Preliminary Injunction.

reasonable doubt, that defendant violated the fourth decretal paragraph of the Preliminary Injunction. Accordingly, the Court finds defendant not guilty with respect to Count Two.[12]

It is so ordered.

12. Because of this finding, it is not necessary for the Court to address defendant's argument that a conviction on both Counts One and Two would violate the Double Jeopardy Clause of the Fifth Amendment.