The **PEOPLE OF the STATE OF NEW YORK, By Robert ABRAMS, Attorney General of the State of New York,** Plaintiffs,

v.

**Joseph FOREMAN, Defendant,**

**and**

**Robert Schenck, Respondent.**

**No. 92 Civ. 4884 (RJW).**

United States District Court, S.D. New York.

Oct. 21, 1993.

Robert Abrams, Atty. Gen., Sanford M. Cohen, Asst. Atty. Gen., New York City, for plaintiffs.

Barkett & Insardi, Bruce A. Barkett, Garden City, NY, for defendant and respondent.

---

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs the People of the State of New York (the "State") have moved to hold defendants Joseph Foreman ("Foreman") and Patrick Mahoney ("Mahoney") and respondent Robert Schenck ("Schenck") in civil contempt for violating two provisions of the injunction (the "Preliminary Injunction") issued by this Court on July 13, 1992 in *People v. Operation Rescue Nat'l,* 92 Civ. 4884 (RJW). Following an evidentiary hearing held on October 12 and 13, 1993 (the "civil contempt hearing"), the Court finds Foreman and Schenck ("the alleged contemnors") in civil contempt.[1]

## BACKGROUND

This motion for civil contempt emerges out of the events surrounding the presentation of a fetus to then Governor Bill Clinton ("Governor Clinton") by Harley David Belew ("Belew") on the morning of July 14, 1992 in contravention of the Court's Preliminary Injunction banning such activity. The underlying facts and general procedural history of this action have been described in three previous opinions associated with the criminal contempt charges against defendant Randall Terry ("Terry").[2] The Court assumes familiarity with those opinions, and now only briefly touches on some of the salient features of the Preliminary Injunction concerning the alleged contemnors.

■ At the conclusion of a hearing held on July 13, 1992, this Court issued its Preliminary Injunction enjoining the defendants in the underlying civil action, including Foreman and Mahoney, and all others acting in their behalf or in concert with them, from, *inter alia,*

> presenting or confronting either Governor Bill Clinton or Senator Albert Gore with any fetus or fetuses or fetal remains in the City of New York or elsewhere in the

Southern District of New York between [12:45 P.M. on July 13, 1992] and 12:00 midnight on July 17, 1992....

Preliminary Injunction, Second Decretal Paragraph, Clause (7) ("Clause (7)").

In addition, the Fourth Decretal Paragraph of the Preliminary Injunction provided:

> IT IS FURTHER ORDERED that defendant organizations and their officers and agents, and all individual defendants and those acting in concert with them, shall make good faith efforts to instruct all organizations and individuals they believe to be planning to participate in any of the activities enumerated in clauses (1) through (7) of the second decretal paragraph above not to engage in the proscribed activities....

Based on these provisions, the State asserts, *inter alia,* that the alleged contemnors violated the Preliminary Injunction insofar as they "aided, abetted, counseled, commanded, induced, procured or caused" Below to present or confront Governor Clinton with a fetus.

## DISCUSSION

### A. *Liability for Civil Contempt*

■ Courts have the inherent power to hold a party in civil contempt to enforce compliance with an order. *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). In assessing whether the alleged contemnors should be held liable in civil contempt for failing to comply with the Preliminary Injunction, the Court must consider three factors. First, was the order being enforced "clear and unambiguous." Second, was proof of noncompliance "clear and convincing." Third, were the defendants "reasonably diligent and energetic in attempting to accomplish what was ordered." *E.E.O.C. v. Local 638 ... Local 28 of the Sheet Metal*

---

1. The Court issued a memorandum decision on October 1, 1993 denying plaintiffs' motion for summary judgment and Foreman and Schenck's cross-motion to dismiss. In that decision, the Court noted that Mahoney did not appear to have been served with a copy of plaintiffs' motion papers. Accordingly, the application for a finding of civil contempt as to him is severed and continued.

2. These opinions are all captioned *United States v. Terry* and appear at: (1) 802 F.Supp. 1094 (S.D.N.Y.1992); (2) 806 F.Supp. 490 (S.D.N.Y. 1992); and (3) 815 F.Supp. 728 (S.D.N.Y.1993).

*Workers Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir.1985); *Powell v. Ward*, 643 F.2d at 931. It is not necessary, however, to show that defendants disobeyed the injunction willfully. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *Donovan v. Sovereign Security Ltd.*, 726 F.2d 55, 59 (2d Cir.1984).

### 1. *Clear and Unambiguous Order*

As this Court pointed out in holding Terry in criminal contempt, "the terms of the Preliminary Injunction were specific and definite as to the time, place and type of conduct enjoined, as well as to who was enjoined from engaging in—or enjoined to engage in—such conduct." *United States v. Terry*, 815 F.Supp. 728, 730 (S.D.N.Y.1993). Indeed, in an earlier decision, the Court noted that Clause (7) was "clear and unambiguous." *United States v. Terry*, 802 F.Supp. 1094, 1103 (S.D.N.Y.1992). At this point, there is no question but that the terms of the Preliminary Injunction were clear and unambiguous.

### 2. *Proof of Noncompliance*

This Court has already found beyond a reasonable doubt that Belew presented Governor Clinton with a fetus on the morning of July 14, 1992 outside the Hotel Intercontinental in the Southern District of New York. *United States v. Terry*, 815 F.Supp. at 732. Although Belew was found at the civil contempt hearing not to have had notice of the Preliminary Injunction, the alleged contemnors have stipulated that they did have notice of the Preliminary Injunction. Once aware of an order which could be enforced against them, the alleged contemnors had " 'a duty to monitor the progress of their cases and to ascertain the terms of any order entered against them.'" *Id.* at 731 (quoting *New York State NOW v. Terry*, 697 F.Supp. 1324, 1332 n. 9 (S.D.N.Y.1988)).

The evidence presented at the civil contempt hearing shows clearly and convincingly that the alleged contemnors neither monitored the progress of the Preliminary Injunction nor complied with its terms. It is clear that, both before and after the issuance of the Preliminary Injunction, the alleged contemnors discussed various plans and ideas about how best to show a fetus to Governor Clinton. In discussions held after the issuance of the preliminary injunction, the alleged contemnors were among those who expressed their willingness to present the fetus to Governor Clinton. They continued to discuss their plans at a dinner conference held on the night of July 13, 1992, during which they refrained from advising Belew not to present the fetus to Governor Clinton.

As part of the plan to show a fetus to Governor Clinton, the alleged contemnors rented a suite in the Hotel Intercontinental, the same hotel at which Governor Clinton was staying during the week of the Democratic National Convention. On the night of July 13, 1992, the alleged contemnors allowed Belew to stay with them at the hotel. A fetus, which had been named "Baby Nathan" was brought to the suite and placed in the kitchenette refrigerator.[3] While the alleged contemnors claim to have been asleep when Belew presented "Baby Nathan" to Governor Clinton at around 8:00 A.M. on July 14, 1992, they greeted him with delight when he returned to the suite. Schenck praised him while Foreman remarked that he had prayed for him, and apparently for the success of the mission. Considering these events and other evidence presented at the civil contempt hearing, the Court finds that the alleged contemnors did not comply with the terms of the Preliminary Injunction.

### 3. *Reasonable Diligence in Adhering to the Order*

Moreover, the evidence demonstrates that the alleged contemnors were not reasonably

---

**3.** At the hearing, it was established that the fetus was named "Baby Nathan" after the prophet Nathan who reprimanded King David for his illicit sexual encounter with Bathsheeba. *2 Samuel* 12:1–25. The alleged contemnors explained that they were intent on graphically demonstrating to Governor Clinton the realities of his prochoice policy with respect to abortion in much the same way Nathan highlighted David's sin through a parable. By associating the fetus presentation with a dramatic biblical scene in which a powerful leader is forced to come to terms with his sinful ways, the alleged contemnors accentuated their firm intention, perhaps even moral conviction, not to comply with the Court's Preliminary Injunction.

diligent and energetic in obeying the injunction. It was established at the civil contempt hearing that they failed to notify Belew of the existence of the Preliminary Injunction and made no attempt to dissuade Belew from violating Clause (7).

In fact, it was only a few hours after the Court issued the Preliminary Injunction, on the evening of July 13, 1992, that Foreman, Schenck, Belew and their colleagues dined together and discussed various plans concerning how and where to present a fetus to Governor Clinton during the Democratic National Convention. That this meeting occurred just hours after the Preliminary Injunction was issued shows, at the very least, indifference to a judicial decree. That the meeting took place less than 12 hours before the fetus was actually presented indicates that the alleged contemnors were eager to ignore the order. As a result, the Court finds that the alleged contemnors willfully violated the Preliminary Injunction.

## B. *Aiding and Abetting*

The alleged contemnors contend, however, that they cannot be found to have aided and abetted Belew in violating the Preliminary Injunction by presenting "Baby Nathan" to Governor Clinton. They argue that liability for aiding and abetting requires a showing that they actually assisted Belew in the presentation of the fetus. However, for the same reasons that this Court found Terry to be an aider and abettor through his willful association and involvement in Belew's violation of the Preliminary Injunction, it finds the alleged contemnors to be aiders and abettors without a showing that they actually assisted in the physical display of "Baby Nathan" in front of Governor Clinton. *See, United States v. Terry,* 815 F.Supp. at 737 ("even if Belew is not guilty of any crime in connection with the presentation of the fetus, defendant may still be found guilty [of aiding and abetting] ... Terry had notice of the terms of the Preliminary Injunction and ... he willfully caused ... Belew to violate the specific and definite terms of Clause (7).").

Liability for aiding and abetting occurs "[i]f a defendant in some way associated himself with the venture, participated in it as in something that he wished to bring about, and sought by his action to make it succeed." *United States v. Sprecher,* 783 F.Supp. 133, 158 (S.D.N.Y.1992) (citing *United States v. Ginsberg,* 758 F.2d 823, 832 (2d Cir.1985) (citing *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949))).

In a fund raising letter dated August, 1992, Schenck summarizes the alleged contemnors' involvement in the events surrounding the fetus presentation. Plaintiffs' Ex. F (the "letter"). Concerning his association with the venture, Schenck writes: "In mid-July, my brother and I joined several others in delivering a prophetic message to the leaders of the Democratic Party during its [sic] National Convention." Later on in the letter, he emphasizes that "[o]ur main objective ... [was] to confront Governor Bill Clinton with a victim of the Democrats' so-called 'pro-choice' policies."

Schenck's letter also recounts some of the activities and events the alleged contemnors participated in as the way to carry out their mission. The letter states:

> We arrived on Friday night, two days before the official start of the convention. As we readied ourselves in prayer we felt the Lord preparing us for the most severe confrontation to date. The next morning a small group of us set out for a notorious abortion clinic in Manhattan.... The next day three of us checked into the Hotel Intercontinental, official headquarters for the governor's campaign. Harley Belew, a softspoken broadcasting consultant from Texas, volunteered to present the baby. In prayer[,] we asked the Lord to help us. Then we simply waited.

Finally, the letter provides proof that the alleged contemnors desired successful completion of the venture. Schenck describes how he was asleep when Belew confronted Governor Clinton with the fetus, but that he was overjoyed when Belew returned to report that the mission was accomplished. Schenck describes his reaction to this news:

> I couldn't believe my ears. "Governor Clinton saw Baby Nathan?! I exploded ... It was a miracle! This unassuming

Texan, with his cowboy boots and string tie, had been used of God [sic] to do the impossible! I quickly dressed and ran downstairs to the room where the press held court.

At the July 14, 1992 press conference, Schenck explains, Belew described what happened while Foreman displayed Baby Nathan. Schenck concludes his description of events, "[I] publicly thanked God.... With our mission accomplished[,] we checked out of the hotel and ... went our separate ways." In sum, it is clear to this Court that the alleged contemnors: (1) associated with the venture to present a fetus to Governor Clinton during the week of the Democratic National Convention; (2) participated in the efforts to bring about this venture; and (3) sought to accomplish the mission.

 Moreover, the alleged contemnors' failure to notify Belew of the existence of the Preliminary Injunction would be sufficient to find them to be aiders and abettors. Inasmuch as Belew dined and stayed with the alleged contemnors between the time the Preliminary Injunction was issued and the time the fetus was presented to Governor Clinton, his lack of notice demonstrates a bad purpose on the part of the alleged contemnors to disregard the law. Therefore, based both on what the alleged contemnors did and did not do after the issuance of the Preliminary Injunction, plaintiffs have proved by clear and convincing evidence that Foreman and Schenck aided and abetted the presentation of the fetus to Governor Clinton in violation of this Court's Preliminary Injunction.

C. *Damages*

The Preliminary Injunction provides: "IT IS FURTHER ORDERED that the failure to comply with the Court's order by any defendant or anyone acting in their behalf or in concert with them shall subject each person to civil damages of $25,000 per day for the first violation of the Court's order...." Preliminary Injunction at 6.

In the Court's view, this provision for liquidated damages in the form of fines in the amount of $25,000 does not permit a damage award of a lesser amount. However, Schenck and Foreman may wish to make an application on notice to plaintiffs to suspend execution of their fines on appropriate conditions, including an agreement not to violate any of the other terms and conditions of the Preliminary Injunction and, in the event the Preliminary Injunction becomes permanent, not to violate any terms and conditions of the permanent injunction.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to hold the alleged contemnors in civil contempt is granted.

Settle order on notice.